STATE OF NORTH CAROLINA v. PHILIP EDWARD WILKINSON

No. 465A94

(Filed 6 September 1996)

### 1. Constitutional Law § 313 (NCI4th)— capital sentencing—mitigating evidence—directive to counsel—no violation of defendant's rights

The trial court did not err by directing defense counsel to proceed in a capital sentencing proceeding with mitigating evidence they had developed after defense counsel informed the court that they had been instructed by defendant not to put on certain expert witnesses, and defendant stated that he just wanted "to make it as simple and easy as possible and get this over with as quickly as possible," where there was no indication of an absolute impasse between defendant and his counsel; defendant did not express a desire to represent himself or to proceed without his attorneys and clearly told the court that he wanted his attorneys to represent him and that he thought they were doing a good job; defendant never told the court that he did not want to present any evidence in mitigation; and the trial court asked defendant if its response to the matter was "all right" with defendant and defendant voiced his satisfaction with the trial court's directive.

**Am Jur 2d, Constitutional Law §§ 643, 644, 732; Criminal Law §§ 593, 594, 627, 628, 631.**

### 2. Appeal and Error § 504 (NCI4th)— proposed instruction—modification by court—invited error

Where defendant submitted in writing a proposed instruction on depravity of mind in a capital sentencing proceeding which referred to "a circumstance which makes a murder *unusually* heinous, atrocious, or cruel," and defendant stated that he had no objection to the court's substitution of the word "especially" for "unusually" in its instruction, any error resulting from the court's modification of defendant's proposed instruction was invited error.

**Am Jur 2d, Appellate Review §§ 743-748.**

### 3. Rape and Allied Offenses § 29 (NCI4th)— sexual offenses and attempted rape—guilty pleas—failure to show victims alive

The State presented sufficient factual bases to support defendant's pleas of guilty to four counts of first-degree sexual

offense and one count of attempted first-degree rape, even if the evidence failed to show that the victims were alive at the time defendant committed the acts constituting those crimes, where the evidence showed that the sexual acts were committed in conjunction with the murders of the victims as part of a continuous chain of events forming one continuous transaction.

**Am Jur 2d, Rape §§ 53-99.**

4. **Criminal Law § 1357 (NCI4th)— mitigating circumstance— mental or emotional disturbance—voyeurism instruction— consideration of other evidence**

The trial court did not err by instructing the jury in a capital sentencing proceeding that it could find the (f)(2) mental or emotional disturbance mitigating circumstance if it found that defendant suffered from voyeurism where (1) any error in the trial court's limitation of the scope of the (f)(2) mitigating circumstance to a consideration of voyeurism was invited error because defendant agreed with the court's proposed instruction; (2) defense counsel stated during closing argument that defendant's emotional disturbance was voyeurism and at no time contended that defendant was under the influence of any other mental or emotional disturbance; (3) the instruction was supported by the testimony of defendant's expert witnesses that defendant suffered from compulsive voyeurism but had no diagnosable mental disease or defect; and (4) the instruction did not prevent the jury from considering any evidence tending to support this mitigating circumstance because the court further instructed that "it is enough that the defendant's mind or emotions were disturbed from any cause." N.C.G.S. § 15A-2000(f)(2).

**Am Jur 2d, Criminal Law §§ 598 et seq.**

5. **Burglary and Unlawful Breakings § 151 (NCI4th); Criminal Law § 1339 (NCI4th)— capital sentencing—aggravating circumstance—murder committed during burglary—intent to commit sexual offense—failure to define sexual offense—no plain error**

The trial court did not commit plain error by failing to instruct on the legal definition of first-degree sexual offense in a capital sentencing proceeding when it gave an instruction for the (e)(5) aggravating circumstance that the murder was committed while defendant was engaged in the commission of a first-degree

STATE v. WILKINSON

[344 N.C. 198 (1996)]

burglary for which the felonious intent was the intent to commit a first-degree sexual offense where the trial court had already found a factual basis for defendant's pleas of guilty to one count of first-degree burglary, three counts of first-degree murder, four counts of first-degree sexual offense, and other offenses; the evidence presented during the capital sentencing proceeding, including expert testimony and defendant's confession, served only to further support defendant's guilt of the sexual offenses and his underlying intent to commit such offenses at the time he broke into and entered the victims' home; and because there was no issue regarding defendant's intent when he entered the victims' dwelling, the phrase "sexual offense" did not have to be defined. N.C.G.S. § 15A-2000(e)(5).

**Am Jur 2d, Appellate Review §§ 773-775; Criminal Law §§ 598 et seq.**

**Sufficiency of evidence, for death penalty purposes, to establish statutory aggravating circumstance that murder was committed in course of committing, attempting, or fleeing from other offense, and the like—post-*Gregg* cases. 67 ALR4th 887.**

6. **Jury § 141 (NCI4th)— capital sentencing—jury voir dire— parole eligibility—questions properly excluded**

The trial court properly denied defendant's pretrial motion for permission to question potential jurors in a capital sentencing proceeding regarding their beliefs about parole eligibility. The decision of *Simmons v. South Carolina*, —— U.S. —— (1994), is inapplicable where defendant remains eligible for parole if given a life sentence.

**Am Jur 2d, Jury § 279.**

**Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

**Voir dire examination of prospective jurors under Rule 24(a) of Federal Rules of Criminal Procedure. 28 ALR Fed. 26.**

7. **Criminal Law § 1343 (NCI4th)— capital sentencing—especially heinous, atrocious, or cruel aggravating circumstance—constitutional instruction**

The trial court's instruction on the (e)(9) "especially heinous, atrocious, or cruel" aggravating circumstance was not rendered

unconstitutionally vague and arbitrary by the court's use of the disjunctive with the narrowing phrases or by the inclusion of an instruction on "depravity" as requested by defendant, and the court's instruction in this case provided constitutionally sufficient guidance to the jury. N.C.G.S. § 15A-2000(e)(9).

**Am Jur 2d, Appellate Review §§ 743, 744; Criminal Law §§ 598 et seq.**

8. **Criminal Law § 1338 (NCI4th)— capital sentencing—aggravating circumstance—murders to avoid apprehension for another murder—sufficiency of evidence**

In a capital sentencing hearing for three first-degree murders, the evidence supported the trial court's submission of the (e)(4) aggravating circumstance that the last two murders were committed for the purpose of avoiding or preventing a lawful arrest where the jury could find from statements in defendant's confession that, after he killed and sexually assaulted the first victim, it occurred to him that there might be other people in the apartment; defendant looked around the apartment and discovered another female and a boy sleeping in a bedroom; and defendant killed the other female and the boy to eliminate potential witnesses against him for the first killing. N.C.G.S. § 15A-2000(e)(4).

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was committed to avoid arrest or prosecution, to effect escape from custody, to hinder governmental function or enforcement of law, and the like—post-*Gregg* cases. 64 ALR4th 755.**

9. **Criminal Law §§ 1339, 1347 (NCI4th)— capital sentencing—aggravating circumstances—murder during burglary—course of conduct—same evidence not used for both**

The trial court did not improperly permit the jury in a capital sentencing proceeding to "double count" two aggravating circumstances based upon the same evidence when it submitted the (e)(5) circumstance that each murder was committed while defendant was engaged in the commission of a burglary and the (e)(11) circumstance that each murder was part of a course of conduct involving violence against other persons where the (e)(5) circumstance was supported by evidence that defendant

broke into and entered the victims' apartment at night with the intent to commit a sexual offense, and the (e)(11) circumstance was supported by evidence that defendant murdered three victims, committed four first-degree sexual offenses, and committed attempted first-degree rape.

**Am Jur 2d, Criminal Law §§ 598 et seq., 628.**

**Sufficiency of evidence, for death penalty purposes, to establish statutory aggravating circumstance that murder was committed in course of committing, attempting, or fleeing from other offense, and the like—post-*Gregg* cases. 67 ALR4th 887.**

10. **Criminal Law § 1336 (NCI4th)— capital sentencing—aggravating circumstances—use of same evidence not permitted—failure to instruct—no plain error**

The trial court's failure to instruct the jury in a capital sentencing proceeding that it could not use the same evidence to support more than one aggravating circumstance could not have affected the outcome and was not plain error in light of the severity of the three murders for which defendant was being sentenced, defendant's commission of four sexual offenses, and the fact that there was independent evidence supporting each aggravating circumstance.

**Am Jur 2d, Appellate Review §§ 773-775; Criminal Law §§ 598 et seq.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant committed murder while under sentence of imprisonment, in confinement or correctional custody, and the like—post-*Gregg* cases. 67 ALR4th 942.**

11. **Criminal Law §§ 1338, 1347 (NCI4th)— capital sentencing—aggravating circumstances—course of conduct—avoiding arrest—same evidence not used for both**

The trial court did not improperly permit the jury in a capital sentencing proceeding to "double count" two aggravating circumstances based upon the same evidence when it submitted the (e)(11) course of conduct aggravating circumstance and the (e)(4) circumstance that the murder was committed for the pur-

pose of avoiding or preventing a lawful arrest where the (e)(11) circumstance was supported by evidence that defendant killed three persons, there was plenary evidence to support the (e)(4) circumstance based upon defendant's motivation for killing the last two victims, and the two circumstances were thus supported by separate and independent evidence.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was committed to avoid arrest or prosecution, to effect escape from custody, to hinder governmental function or enforcement of law, and the like—post-*Gregg* cases. 64 ALR4th 755.**

12. **Criminal Law § 1348 (NCI4th)— capital sentencing— instruction on mitigation**

The trial court did not err by failing to give defendant's requested instruction in a capital sentencing proceeding that mitigation means "something . . . that might cause you to lessen or reduce [defendant's] punishment" since the pattern jury instruction given by the court that mitigation is "a fact or group of facts . . . which may be considered as extenuating or reducing the moral culpability of the killing, or making it less deserving of extreme punishment than other first degree murders" substantially conformed with defendant's proposed instruction. Furthermore, the trial court's instruction on mitigation did not unduly focus the jury's attention on the killing itself and preclude the jury from considering any aspect of defendant's character or background as a basis for a sentence less than death.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

13. **Criminal Law § 1348 (NCI4th)— capital sentencing—nonstatutory mitigating circumstances—uncontradicted evidence—failure to find mitigating value**

Even if uncontradicted evidence supported nonstatutory mitigating circumstances submitted to the jury, defendant's constitutional rights were not violated by the jury's failure to find that those circumstances existed and had mitigating value.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**14. Criminal Law § 1348 (NCI4th)— capital sentencing—three murders—mitigating circumstances—failure to repeat instructions for each victim**

The trial court in a capital sentencing proceeding for three first-degree murders did not err by failing to repeat the full set of instructions on Issues Two, Three, and Four related to the finding and weighing of mitigating circumstances with respect to each victim where the mitigating circumstances for each victim were the same; the court gave complete instructions to the jury as to one victim and then instructed as to the differing aggravating circumstances that applied to each victim; all of the possible mitigating circumstances were listed on the Issues and Recommendation form as to each victim; at the conclusion of the instructions, the court reminded the jury that the complete instructions on Issues Two, Three, and Four applied to each victim; and nothing in the record shows that the jurors did not carefully consider the mitigating circumstances or that they were confused or misled by the charge. Furthermore, any error in the manner in which the court gave these instructions was invited error because defendant consented thereto.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

**15. Criminal Law § 1360 (NCI4th)— capital sentencing— jury's failure to find impaired capacity—no constitutional violation**

The jury's failure to find the (f)(6) impaired capacity mitigating circumstance did not render the sentences of death imposed upon defendant unreliable and cruel or unusual punishment where the trial court instructed on this circumstance and permitted the jury to consider the evidence of impaired capacity offered by defendant. The jury was free to disbelieve the evidence or to conclude that the evidence was not convincing. N.C.G.S. § 15A-2000(f)(6).

**Am Jur 2d, Appellate Review §§ 743, 744.**

STATE v. WILKINSON

[344 N.C. 198 (1996)]

### 16. Jury § 219 (NCI4th)— capital sentencing—death penalty views—excusal for cause

The trial court in a capital sentencing proceeding did not err by excusing for cause three prospective jurors who stated unequivocally in response to the prosecutor's questions that he or she would be unable to follow the law and recommend a sentence of death even if that was what the facts and circumstances required.

**Am Jur 2d, Jury § 279.**

**Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

**Voir dire examination of prospective jurors under Rule 24(a) of Federal Rules of Criminal Procedure. 28 ALR Fed. 26.**

### 17. Jury § 262 (NCI4th)— peremptory challenges—death penalty views

Defendant's constitutional rights were not violated when the trial court allowed the prosecutor in a capital sentencing proceeding to peremptorily challenge several prospective jurors who showed reluctance about imposing the death penalty.

**Am Jur 2d, Jury § 279.**

**Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

**Voir dire examination of prospective jurors under Rule . 24(a) of Federal Rules of Criminal Procedure. 28 ALR Fed. 26.**

### 18. Criminal Law § 1373 (NCI4th)— death sentences not disproportionate

Sentences of death imposed upon defendant for three first-degree murders were not excessive or disproportionate to the penalty imposed in similar cases where defendant beat all three victims to death with a bowling pin; the jury found the course of conduct aggravating circumstance for each murder and that each murder was committed while defendant was engaged in a first-degree burglary; the jury found as an aggravating circumstance

for two of the murders that they were committed by defendant to avoid a lawful arrest; the jury found the especially heinous, atrocious, or cruel aggravating circumstance for the murders of the two female victims; defendant committed multiple sexual offenses against the two female victims; and defendant was also convicted of multiple counts of burglary and larceny.

**Am Jur 2d, Criminal Law § 628.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing sentences of death entered by Johnson (E. Lynn), J., at the 22 August 1994 Criminal Session of Superior Court, Cumberland County, upon pleas of guilty for three counts of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments imposed was allowed on 7 August 1995. Heard in the Supreme Court 10 April 1996.

*Michael F. Easley, Attorney General, by Gail E. Weis, Associate Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant-appellant.*

ORR, Justice.

On 9 January 1992, defendant turned himself in to the Fayetteville Police Department, waived his rights, and gave a tape-recorded confession to Sergeant Jeff Stafford. During this confession, defendant admitted to being a "peeping Tom"; to breaking and entering the apartment of Judy Hudson on 29 July 1991 in the middle of the night; to beating to death with a bowling pin Ms. Hudson, her nineteen-year-old daughter, Chrystal Hudson, and her eleven-year-old son, Larry Hudson; to attempting to rape Chrystal Hudson; to sexually assaulting and anally and vaginally penetrating Ms. Hudson and Chrystal Hudson; to stealing cigarettes, money, and a cigarette lighter from two pocketbooks in the apartment; and to breaking into the apartment a second time to retrieve the bowling pin and a lightbulb that he had used to sexually assault Ms. Hudson.

Defendant was subsequently indicted for three counts of first-degree murder, two counts of first-degree burglary, one count of attempted first-degree rape, four counts of first-degree sexual offense, and two counts of felonious larceny. On 22 August 1994,

STATE v. WILKINSON

[344 N.C. 198 (1996)]

defendant pled guilty to all charges. After the presentation of evidence by the State regarding the basis for defendant's pleas, the court directed that with respect to one of the first-degree burglary counts, it would instead proceed on a charge of second-degree burglary based upon the evidence that at the time defendant entered the Hudsons' apartment, all victims were deceased.

The cases were joined for a capital sentencing hearing before a jury at the 22 August 1994 Criminal Session of Superior Court, Cumberland County. The jury recommended and the trial court imposed a sentence of death for each of the three first-degree murder convictions. Additionally, the trial court sentenced defendant to four consecutive terms of life imprisonment for the four counts of first-degree sexual offense, to a consecutive term of life imprisonment for the first-degree burglary conviction, to a consecutive term of forty years' imprisonment for the consolidated second-degree burglary and larceny convictions, and to a consecutive term of twenty years' imprisonment for the attempted first-degree rape conviction. The sentences of death were stayed on 23 September 1994, pending this appeal. Defendant's motion to bypass the Court of Appeals on all other convictions was allowed on 7 August 1995.

Defendant appeals to this Court, asserting seventeen assignments of error. For the reasons stated herein, we conclude that defendant's capital sentencing proceeding was free from prejudicial error and that defendant's sentences of death are not disproportionate.

During the capital sentencing proceeding, the State's evidence tended to show the following: Defendant, a soldier stationed at Fort Bragg, had a history of being a "peeping Tom." On the evening of 29 July 1991, defendant was "thinking along the lines of rape." After deciding not to rape a friend with whom he had eaten earlier in the evening, defendant drove past the Heather Ridge Apartments and decided to go there to "sneak a peek," to be a "Peeping Tom" and "watch when people take their clothes off[] or engage[] in sex." While walking around the complex, defendant saw light coming from a television in one of the apartments. He walked up to the sliding glass doors at the back of the apartment, looked inside, and saw Chrystal Hudson lying on the couch asleep. Defendant stated that as he was looking at her, he was "getting all worked up" because he "had already planned on doing that other chick and it was already in my mind." Defendant saw a bowling pin outside the apartment by the sliding glass door and picked it up. He stated that he just "wanted the

STATE v. WILKINSON

[344 N.C. 198 (1996)]

sex" and "did not want to hurt anybody," but he had the bowling pin in his hand and "knew [he] was going to kill her."

Defendant walked into the apartment, went over to the young girl, and ran his hand across her thigh and buttocks. Chrystal Hudson woke up startled, and before she could yell, defendant "clubbed her on her head." She kept trying to scream, so defendant "just kept bopping her . . . like 70 times." When Chrystal stopped trying to scream, defendant bit her breasts, performed oral sex on her, and attempted to penetrate her vaginally but was unable to get an erection.

Defendant stated that it suddenly occurred to him that "somebody else might have come in the apartment," that "there might be some other people in the house," that "maybe there was a boyfriend in the bedroom," that "maybe she was married." While looking around the apartment, defendant saw "another female and a boy" lying in bed sleeping. Defendant stated that he thought, "Oh, man, if they wake up and see me in here, I still haven't had my jocks off yet." He went back to the living room to get the bowling pin and walked back to the bedroom where he had noticed the two individuals who were sleeping. Defendant "slugged them" with the bowling pin, hitting Ms. Hudson about eight times and Larry four or five times. Defendant stated that neither of them ever made a sound.

After he had killed Ms. Hudson, defendant performed oral sex on her and then took a lightbulb out of a lamp in the bedroom and used it to vaginally penetrate her. Defendant stated that he "just went back and forth between the chicks," engaging in perverted sexual acts.

Knowing that he did not want "to pay the price" for what he had done and that he would need to go AWOL, defendant began looking for money. He saw two purses on the dining room table. Defendant dumped the purses on the table and took a one-dollar bill, a cigarette lighter, and some cigarettes.

After defendant left the apartment and went back to his car, he realized that he had left the lightbulb and the bowling pin in the apartment. He went back to the apartment and retrieved the lightbulb and bowling pin. Concerned about the presence of his fingerprints in the apartment, defendant wiped off the screen door and the faucet in the bathroom where he had washed his hands.

At approximately 4:00 a.m., defendant arrived at his barracks. On 30 July 1991, the day after the murders, defendant went AWOL. On 9 January 1992, defendant turned himself in to the Fayetteville Police

STATE v. WILKINSON

[344 N.C. 198 (1996)]

Department and confessed to murdering the Hudsons. Defendant agreed to provide bite-mark, blood, saliva, and hair samples to the police. The results of the laboratory analyses of the samples confirmed that defendant had committed the crimes charged.

Defendant's evidence during the capital sentencing proceeding tended to show that defendant's childhood was marked by poverty, paternal abandonment, and maternal neglect. Defendant was obsessed with sin, heaven, and hell, having been raised by his mother, who was a member of the Pentecostal Church. Testimony by defendant's brother and sister tended to show that defendant was a caring, loving person; that he was an alcoholic; and that the murders were "grossly" out of character for him. Two expert witnesses, Dr. Janet Vogelsang, a psychotherapist, and Dr. Stephen Alexander, a forensic criminal psychologist, testified that defendant knew that what he had done was wrong, that defendant tends to exaggerate his childhood problems, that he relies on alcohol to cope, that he suffers from compulsive voyeurism, and that he has average or slightly above average intelligence. They also testified that although he is a "disturbed individual" and is at "high risk" to engage in criminal behavior because of his mother's extreme religious views, maternal neglect, his drinking, and his lack of coping skills, defendant has no diagnosed mental disease, mental illness, or defect.

## I.

[1] In his first assignment of error, defendant contends that the trial court improperly required defense counsel to proceed with calling expert psychological witnesses, in contravention of defendant's wishes.

After accepting defendant's pleas of guilty, the trial court began a discussion with the State and defense counsel regarding which of defendant's pretrial motions needed to be heard prior to jury selection for the capital sentencing proceeding. During this discussion, the following exchange occurred:

Mr. McGlothlin [defense counsel]: . . . Mr. Wilkinson has certain desires on phase two which are inconsistent with what Mr. Carter and I feel [is] our responsibility as his lawyers.

. . . [H]e instructed us at one time this past weekend not to put on certain evidence we had, certain witnesses. We have expert witnesses.

And we would like some guidance from the Court as to what our responsibilities are when our client instructs us in this matter . . . .

. . . .

THE COURT:  . . . Your attorneys have indicated that you have certain desires in respect to a sentencing proceeding. What are those at this time?

THE DEFENDANT: Your Honor, first of all I would like to have these extra motions dismissed. I just don't see the need for it. I'm guilty of what I'm charged with. I've already said that.

. . . I just want to make it as simple as possible and as easy as possible and get this over with as quickly as possible. And I do want my lawyers to represent me. And I think they've done a good job. As far as the sentencing, I would just like to—

THE COURT: Well, at this time I'm going to enter a general directive to your attorneys to simply proceed to offer the evidence that they have developed in respect to any issues on mitigating circumstances that appear of record. They have a duty both as . . . attorney[s] and as officers of the Court to at least do that on your behalf . . . . [F]or our present purposes, I'm going to direct them to proceed with the evidence they've developed. All right, sir?

THE DEFENDANT: All right. Thank you.

Defendant first argues that the trial court did not exercise its discretion in considering whether to grant defendant's request under the alleged belief that it was a legal requirement for defense counsel to present evidence in mitigation. N.C.G.S. § 15A-2000(a) provides in pertinent part as follows:

(1)  Upon conviction or adjudication of guilt of a defendant of a capital felony, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment.

    . . . .

(3)  Evidence may be presented as to any matter that the *court* deems relevant to sentence, and may include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (e) and (f). *Any evidence which the court deems to have probative value may be received.*

N.C.G.S. § 15A-2000(a)(1), (3) (Supp. 1995) (emphasis added). In *State v. Walls*, 342 N.C. 1, 463 S.E.2d 738 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 794 (1996), this Court stated that

> the United States Supreme Court concluded that the Eighth and Fourteenth Amendments dictate that a jury in a capital case must "not be precluded from considering *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *[Lockett v. Ohio*, 438 U.S. 586, 604, 57 L. Ed. 2d 973, 990 (1978)]; *accord* N.C.G.S. § 15A-2000(a)(3) (Supp. 1994); *State v. Pinch*, 306 N.C. 1, 292 S.E.2d 203, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), *reh'g denied*, 459 U.S. 1189, 74 L. Ed. 2d 1031 (1983), *overruled on other grounds by State v. Robinson*, 336 N.C. 78, 443 S.E.2d 306 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 650 (1995), *and by State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988). "[H]owever, the ultimate issue concerning the admissibility of such evidence must still be decided by the presiding trial judge, and his decision is guided by the usual rules which exclude repetitive or unreliable evidence or that lacking an adequate foundation." *Pinch*, 306 N.C. at 19, 292 S.E.2d at 219.

*Walls*, 342 N.C. at 51, 463 S.E.2d at 764-65.

Defendant also argues that he was entitled to control tactical decisions related to the capital sentencing proceeding. We stated in *State v. Ali*, 329 N.C. 394, 407 S.E.2d 183 (1991), that it is only "when counsel and a fully informed criminal defendant client reach an absolute impasse as to . . . tactical decisions[] [that] the client's wishes must control." *Id.* at 404, 407 S.E.2d at 189. In *State v. McCarver*, 341 N.C. 364, 462 S.E.2d 25 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 482 (1996), the defendant claimed that the trial court erred by allowing defense counsel to make important tactical decisions about his case without allowing defendant's wishes to control, in violation of the holding in *Ali*. This Court rejected the defendant's contention, finding nothing in the record to indicate an "absolute impasse" between the defendant and his counsel regarding trial tactics. We noted in *McCarver* that "[a]t no time did defendant voice any complaints to the trial court as to the tactics of his defense team." *Id.* at 385, 462 S.E.2d at 36.

Similarly, here, there is no indication in the record of an absolute impasse. Defendant told the trial court what his wishes were regard-

ing the sentencing proceeding but claimed no conflict with his attorneys. There was nothing in the trial court's response that was inconsistent with defendant's concerns. At no time did defendant express a desire to represent himself or to proceed without his attorneys. In fact, defendant clearly told the trial court that he wanted his attorneys to represent him and that he thought they were doing a good job. Defendant never told the trial court that he did not want to present any evidence in mitigation. The trial court asked defendant if the trial court's response to the matter was "all right" with defendant, and defendant voiced his satisfaction with the trial court's resolution of the situation.

The trial court balanced defendant's desire to be represented by counsel and the obligation of defense counsel to effectively represent their client. Moreover, in the absence of "an absolute impasse," strategic and tactical decisions regarding what witnesses to call are within the province of counsel after consultation with the client. *Ali*, 329 N.C. at 404, 407 S.E.2d at 189. This assignment of error is overruled.

## II.

[2] In his next assignment of error, defendant contends that the trial court committed plain error when it gave defendant's proposed instruction on "depravity." He argues that the instruction, "although a reasonably accurate dictionary definition of the word 'depravity,' had the effect of informing jurors that, because the defendant was unable to control his conduct, the killings were depraved and, therefore heinous, atrocious or cruel." He asserts that the instruction turned what should have been a mitigating circumstance—lack of control—into an aggravating circumstance, thereby violating his state and federal constitutional rights to due process of law and to be free from cruel and unusual punishment.

In the instant case, defendant requested that the trial court instruct the jury on depravity of mind, and the trial court did so in conjunction with the pattern jury instruction for the (e)(9) "especially heinous, atrocious or cruel" aggravating circumstance. N.C.G.S. § 15A-2000(e)(9). The trial court instructed in pertinent part as follows:

I instruct you that the term "depravity" means a state of mind which is without moral restraint and control. Certainly every criminal offense, and in particular, each first degree murder

demonstrates a lack of moral restraint or control. In order for the jury to consider whether the depravity of the defendant constitutes a circumstance which makes a murder especially heinous, atrocious, or cruel to the extent it constitutes an aggravating factor, you must find beyond a reasonable doubt that each—that the lack of moral restraint and control was in excess of the lack of restraint and control in an ordinary premeditated murder and rises to a level where the indignities, fear, and suffering of the victim during the course of the causing of death actually provide a gratification and satisfaction to the defendant.

*See* N.C.P.I.—Crim. 150.10(9) (1995).

Defense counsel had submitted a proposed instruction in writing which referred to "a circumstance which makes a murder *unusually* heinous, atrocious, or cruel." The trial court substituted the word "especially" for "unusually" to ensure that the "heinous, atrocious, or cruel" aggravating circumstance was labeled as provided in N.C.G.S. § 15A-2000(e)(9). Defendant stated that he had no objection to this change.

On appeal, defendant now contends that the trial court's modification of his proposed instruction had the effect of telling the jury that the inability to control one's moral conduct because of an emotional disturbance is an aggravating circumstance, thereby undercutting the (f)(2) "mental or emotional disturbance" and the (f)(6) "diminished capacity" mitigating circumstances. N.C.G.S. § 15A-2000(f)(2), (6).

Defendant did not challenge the instruction or the constitutionality of the instruction at trial. Consequently, the trial court did not have the opportunity to consider or rule on these issues. N.C. R. App. P. 10(b)(1). Generally, under these circumstances, defendant would be required to show plain error on appeal. N.C. R. App. P. 10(c)(4). However, this Court has consistently denied appellate review to defendants who have attempted to assign error to the granting of their own requests. "A criminal defendant will not be heard to complain of a jury instruction given in response to his own request." *State v. McPhail*, 329 N.C. 636, 643, 406 S.E.2d 591, 596 (1991); *see also State v. Basden*, 339 N.C. 288, 303, 451 S.E.2d 238, 246 (1994) ("Having invited the error, defendant cannot now claim on appeal that he was prejudiced by the instruction."), *cert. denied*, —— U.S. ——, 132 L. Ed. 2d 845 (1995); *State v. Patterson*, 332 N.C. 409, 415, 420 S.E.2d 98, 101 (1992) ("[A]ny error in this regard was invited error which

does not entitle the defendant to any relief and of which he will not be heard to complain on appeal.").

Here, defendant requested an instruction on depravity and agreed to the substitution of the word "especially" for the word "unusually." "Since [defendant] asked for the exact instruction that he now contends was prejudicial, any error was invited error. Therefore, this assignment is without merit and is overruled." *McPhail*, 329 N.C. at 644, 406 S.E.2d at 596-97.

### III.

[3] Next, defendant assigns as error the trial court's acceptance of defendant's guilty pleas to four counts of first-degree sexual offense and one count of attempted first-degree rape. After the State presented the factual bases for defendant's guilty pleas, defense counsel asked the trial court not to accept defendant's pleas of guilty to the sexual offense and attempted rape charges because of an alleged insufficient showing by the State that the victims were alive when they were sexually assaulted.

We note that, on appeal, defendant does not contend that he did not commit the acts necessary to constitute first-degree sexual offense or attempted first-degree rape. Instead, he contends that because there was no evidence that the victims were alive at the time defendant committed all of the acts, the evidence was insufficient to support pleas of guilty for the crimes of first-degree sexual offense and attempted first-degree rape. Defendant maintains that first-degree sexual offense and attempted first-degree rape are committed "only if the victim is alive at the time of the sexual conduct" because the essence of the crimes of first-degree rape and first-degree sexual offense is the assaultive character of the acts required to commit those offenses. *See State v. Zuniga*, 320 N.C. 233, 260, 357 S.E.2d 898, 915 (noting that the " 'essence' of forcible rape is the assault"), *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987).

In response, the State, relying on *State v. Thomas*, 329 N.C. 423, 407 S.E.2d 141 (1991), contends that the sexual acts were committed during a continuous transaction that began when the victims were alive. Therefore, the evidence was sufficient to support defendant's pleas of guilty to and convictions of first-degree sexual offense and attempted first-degree rape.

"A person is guilty of rape in the first degree if the person engages in vaginal intercourse . . . [w]ith another person by force and against

the will of the other person and . . . [i]nflicts serious personal injury upon the victim or another person . . . ." N.C.G.S. § 14-27.2(a)(2)(b) (Supp. 1995). "A person is guilty of a sexual offense in the first degree if the person engages in a sexual act . . . [w]ith another person by force and against the will of the other person, and . . . [i]nflicts serious personal injury upon the victim or another person . . . ." N.C.G.S. § 14-27.4(a)(2)(b) (Supp. 1995). The term "sexual act" is defined as "cunnilingus, fellatio, anilingus, and anal intercourse" or "the penetration, however slight, by any object into the genital or anal opening of another person's body." N.C.G.S. § 14-27.1(4) (1988). "Bites to the breast do not fall within this definition." *Thomas*, 329 N.C. at 434, 407 S.E.2d at 149.

As the State correctly points out, this Court has considered and rejected defendant's position in *Thomas*. *Id.* at 433-36, 407 S.E.2d at 148-50. In *Thomas*, the State's evidence tended to show that the victim was alive when her breasts were bitten but probably was dead when defendant inserted a telephone into her vagina. The chief medical examiner testified that, in his opinion, " 'it was somewhat more probable that she was dead than alive' when the telephone was inserted in her vagina." *Id.* at 434, 407 S.E.2d at 149. The medical examiner testified that he "could not be certain whether she was dead or alive at that time, 'but to me the medical aspects of the evidence were a little more for her being dead at the time she received that.' " *Id.*

Under N.C.G.S. § 15A-1022(c), a "judge may not accept a plea of guilty . . . without first determining that there is a factual basis for the plea." N.C.G.S. § 15A-1022(c) (Supp. 1995).

> "The trial judge may consider any information properly brought to his attention in determining whether there is a factual basis for a plea of guilty . . . ." *State v. Dickens, supra*, 299 N.C. [76,] 79, 261 S.E.2d [183,] 185-86 [(1980)]. That which he does consider . . . must appear in the record, so that an appellate court can determine whether the plea has been properly accepted.

*State v. Sinclair*, 301 N.C. 193, 198, 270 S.E.2d 418, 421 (1980).

However, in *Thomas*, we stated as follows:

> In the case *sub judice*[,] it is unnecessary for us to decide whether the evidence was sufficient to allow a reasonable inference that the victim was alive when the sexual offense as defined in our statutes was committed. Because the sexual act was com-

mitted during a continuous transaction that began when the victim was alive, we conclude the evidence was sufficient to support defendant's conviction for first-degree sexual offense. This Court, on numerous occasions, has held that to support convictions for a felony offense and related felony murder, all that is required is that the elements of the underlying offense and the murder occur in a time frame that can be perceived as a single transaction.

. . . .

This Court has for many years applied the same doctrine to sexual offense and murder occurring in a continuous chain of events. In *State v. Williams*, 308 N.C. 47, 301 S.E.2d 335, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983), we upheld defendant's conviction for first-degree murder committed during the perpetration of sexual offense—repeatedly forcing a mop handle into a woman's vagina after beating her, resulting in her death. We held as follows: "It is immaterial whether the felony occurred prior to or immediately after the killing so long as it is part of a series of incidents which form one continuous transaction." *Id.* at 67, 301 S.E.2d at 348.

. . . While the first-degree sexual offense (the insertion of the receiver into her vagina) could have occurred before or after the victim's death, clearly, it occurred near the time of the victim's final demise during a continuous transaction.

The precise timing of the insertion of the telephone receiver into the victim's vagina is irrelevant if it occurred during a continuous transaction. All of the evidence clearly suggest[s] that the sexual offense and the death of the victim were "so connected as to form a continuous chain of events." *[State v.] Fields*, 315 N.C. [191,] 202, 337 S.E.2d [518,] 525 [(1985)].

*Thomas*, 329 N.C. at 434-35, 436, 407 S.E.2d at 149, 150.

Similarly, in the case of *State v. Powell*, 299 N.C. 95, 261 S.E.2d 114 (1980), this Court upheld the defendant's felony murder conviction based upon the underlying felony of first-degree rape after autopsy evidence showed that "[t]he bruises to [the victim's] vagina were inflicted within a half hour prior to death or within a few minutes after death." *Id.* at 100, 261 S.E.2d at 117.

In this case, the State's evidence tended to show that the investigators found Chrystal Hudson's body lying face down on the sofa.

She was nude except for her underpants, which had been pulled down around her legs. There was a shirt at the foot of the sofa. Judy Hudson was found by investigators lying face down on the floor of her bedroom; her head was resting on a pair of underpants. She was nude except for a yellow T-shirt that had been pulled above her breasts. There were blood smears on her breasts, thighs, sides, and legs. Both Chrystal and Judy Hudson had suffered blunt-force injuries to the face and head, bruises, and lacerations. Chrystal Hudson had bite marks on her back, buttocks, and right nipple. Dr. John Butts, chief medical examiner for the State of North Carolina, testified as follows:

> Q. Dr. Butts, with respect to the bite marks, is there any indication as to whether those bite marks were inflicted pre- or post-mortem?
>
> A. They are consistent with being inflicted in a peri-mortem interval. I couldn't say necessarily just before or just after, but around the time of death.
>
>    . . . .
>
> Q. The bruising that you noted on the shoulder, hands, and arm areas, did that appear to be peri-mortem to you?
>
> A. There was bruising present indicative that the person was alive in my opinion at the time those bruises were received.

Dr. Butts further testified that the "defensive wounds" to Chrystal's hands and arms would not cause her to lose consciousness and would not be fatal; however,

> any one of [the wounds inflicted upon her head] could have caused unconsciousness . . . . A number of the injuries to the head could have been fatal. But certainly the one to the left side of the head which caused extensive laceration, bruising, and the damage to the brain would have been most likely to be the most fatal wound.

In summary, in the case at bar, there was sufficient evidence that the crimes of attempted first-degree rape and first-degree sexual offense to which defendant pled guilty were "committed in conjunction with the murder as part of a continuous chain of events, forming one continuous transaction." *Thomas*, 329 N.C. at 436, 407 S.E.2d at 150. This assignment of error is overruled.

## IV.

**[4]** Next, defendant assigns as plain error the trial court's instruction to the jury on the (f)(2) mitigating circumstance that the murder was "committed while the defendant was under the influence of mental or emotional disturbance." N.C.G.S. § 15A-2000(f)(2). The trial court instructed the jury as follows:

> Consider whether this murder was committed while the defendant was under the influence of mental or emotional disturbance. A defendant is under such influence if he is in any way affected or influenced by a mental or emotional disturbance at the time he kills. Being under the influence of mental or emotional disturbance is similar to, but not the same as, being in the heat of passion upon adequate provocation. A person may be under the influence of mental or emotional disturbance even if he had no adequate provocation and even if his disturbance was not so strong to constitute heat of passion or preclude deliberation. For this mitigating circumstance to exist, it is enough that the defendant's mind or emotions were disturbed from any cause and that he was under the influence of the disturbance when he killed the victim.
>
> You would find this mitigating circumstance if you find that the defendant suffered from voyeurism and that as a result, the defendant was under the influence of mental and emotional disturbance when he killed the victim.

Defendant contends that the instruction improperly limited the scope of the (f)(2) mitigating circumstance to a consideration of voyeurism.

We note at the outset that, at the charge conference, defendant agreed with the trial court's proposed instruction on the mental or emotional disturbance mitigating circumstance. The following exchange took place between the parties and the trial court:

> THE COURT: There is an additional statutory mitigating circumstance that, despite the cross-examination of the State, that the murder was committed while the defendant was under the influence of mental or emotional disturbance, that is, voyeurism. Do you want me to submit that one, Mr. McGlothlin?
>
> MR. McGLOTHLIN: Yes.

In *State v. Harris*, 338 N.C. 129, 449 S.E.2d 371 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 752 (1995), the defendant argued

**STATE v. WILKINSON**

[344 N.C. 198 (1996)]

that it was error for the trial court to instruct the jury that the defendant was required to prove both the disease of alcoholism and that the defendant was intoxicated at the time of the crime in order for the jury to find the mitigating circumstance that the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired. There, we stated, "[T]he defendant, through his attorney, agreed at the charge conference that the court would charge on this feature of the case as it did. If there was error in the charge, it was invited error and we shall not review it." *Id.* at 150, 449 S.E.2d at 380. Likewise, because defendant agreed with the trial court's proposed instruction and confirmed his desire to have the mental or emotional disturbance mitigating circumstance submitted to the jury in the language suggested by the trial court, we shall not review it.

In addition, the transcript shows that defense counsel stated in his closing argument regarding the (f)(2) mitigating circumstance that "[defendant's] emotional psychological disturbance was voyeurism." At no time did defense counsel contend that defendant was under the influence of any other mental or emotional disturbance when he committed these crimes. " 'The theory upon which a case is tried in the lower court must control in construing the record and determining the validity of the exceptions.' " *Benson*, 323 N.C. at 322, 372 S.E.2d at 519 (quoting *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982)).

Moreover, the evidence at trial supported the instruction as given. Dr. Stephen Alexander testified that defendant was a disturbed individual who suffered from compulsive voyeurism. He also testified that at the time defendant committed the crimes, he was legally sane. On cross-examination, Dr. Alexander agreed that defendant had no diagnosable disease, mental illness, or defect. Defendant's other expert witness, Dr. Janet Vogelsang, also testified to defendant's problem with voyeurism but diagnosed no mental disease or defect.

Finally, in *State v. Hill*, 331 N.C. 387, 417 S.E.2d 765 (1992), *cert. denied*, 507 U.S. 924, 122 L. Ed. 2d 684 (1993), we held that the trial court's instruction did not improperly limit consideration of the mental or emotional disturbance mitigating circumstance to brain damage in light of language included in the instruction that " '[i]t is enough that the defendant's mind or emotions were disturbed, from any cause.' " *Id.* at 419, 417 S.E.2d at 782. Likewise, the trial court's instruction in the instant case expressly directed the jury that in order

to find this mitigating circumstance, "it is enough that the defendant's mind or emotions were disturbed from any cause." Thus, this instruction clearly did not prevent the jury from considering any evidence tending to support this mitigating circumstance. This assignment of error is overruled.

## V.

[5] In defendant's next assignment of error, he contends that the trial court committed plain error in not instructing the jury on the legal definition of first-degree sexual offense. Here, defendant contends that the trial court should have instructed the jury on the elements of first-degree sexual offense when it gave the instruction for the (e)(5) aggravating circumstance that the murder was "committed while the defendant was engaged . . . in the commission of . . . a . . . burglary." N.C.G.S. § 15A-2000(e)(5). The trial court instructed the jury as follows:

> Turning to the first aggravating circumstance, which reads, was this murder committed by the defendant while the defendant was engaged in the commission of first degree burglary?
>
> . . . [F]irst degree burglary is the breaking and entering of an occupied dwelling house of another without his consent in the nighttime *with the intent to commit first degree sexual offense.*
>
> If you find from the evidence beyond a reasonable doubt that when the defendant killed the victim, the defendant had broken and entered an occupied dwelling house without the consent of the tenant during the nighttime, and *at that time intended to commit first degree sexual offense*, you would find this aggravating circumstance and would so indicate by having your foreman write "yes" in the space after this aggravating circumstance on the issues and recommendation form. If you do not so find or have a reasonable doubt as to one or more of those things, you will not find this aggravating circumstance and would so indicate by having your foreman write "no" in that space.

(Emphasis added.)

Defendant made no objection at trial to the instructions given, thus waiving the issue on appeal. N.C. R. App. P. 10(b)(2). Defendant, therefore, contends that the lack of an instruction defining "sexual offense" constituted "plain error." We disagree.

" '[T]he plain error rule . . . is always to be applied cautiously,' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)), and "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court," *Henderson v. Kibbe*, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212 (1977), *quoted in Odom*, 307 N.C. at 661, 300 S.E.2d at 378.

At the outset, we note that defendant contends that the burglary instruction unconstitutionally reduced the State's burden of proving the elements of first-degree sexual offense and the (e)(5) aggravating circumstance. Upon review of the record, we note that no constitutional issues were presented, argued, or decided by the trial court with respect to whether the instruction unconstitutionally lightened the State's burden of proof. As we have consistently held,

> this Court is not required to pass upon a constitutional issue unless it affirmatively appears that the issue was raised and determined in the trial court. *State v. Woods*, 307 N.C. 213, 297 S.E.2d 574 (1982); *City of Durham v. Manson*, 285 N.C. 741, 208 S.E.2d 662 (1974); *State v. Jones*, 242 N.C. 563, 89 S.E.2d 129 (1955); *[Motor Inn] Management, Inc. v. [Irvin-Fuller] Development Co.*, 46 N.C. App. 707, 266 S.E.2d 368, *disc. rev. denied and appeal dismissed*, 301 N.C. 93[, 273 S.E.2d 299] (1980). This is in accord with decisions of the United States Supreme Court. *E.g., Irvine v. California*, 347 U.S. 128, 98 L. Ed. 561 (1954); *Edelman v. California*, 344 U.S. 357, 97 L. Ed. 387 (1953).

*State v. Creason*, 313 N.C. 122, 127, 326 S.E.2d 24, 27 (1985).

Here, defendant raises the issue of the constitutionality of the instruction for the first time on appeal. Because he did not ask the trial court to pass upon the constitutional issue, we decline to do so now. *Id.*

Next, defendant argues that the jury was allowed to speculate on what constituted a first-degree sexual offense and that, without the sexual offense instruction, there was no basis for the jury to determine from the burglary instruction given by the trial court if the (e)(5) aggravating circumstance existed. We find defendant's argument misguided because the State was not required to prove that defendant actually committed the felony of first-degree sexual offense, just that

when he broke into and entered the Hudsons' home, he *intended* to commit a sexual offense.

"Intent to commit a felony is an essential element of burglary." *State v. Faircloth*, 297 N.C. 388, 395, 255 S.E.2d 366, 370 (1979). However,

> "actual commission of the felony, which the indictment charges was intended by the defendant at the time of the breaking and entering, is not required in order to sustain a conviction of burglary." *State v. Tippett*, 270 N.C. 588, 155 S.E.2d 269 (1967). Moreover, when the indictment alleges an intent to commit a particular felony, the State must prove the particular felonious intent alleged.

*Faircloth*, 297 N.C. at 395, 255 S.E.2d at 370.

Before we turn to the evidence of defendant's intent, as the State argues, "it is important to consider this instruction in the context of the entire proceeding." Defendant pled guilty to one count of first-degree burglary, three counts of first-degree murder, four counts of first-degree sexual offense, one count of attempted first-degree rape, one count of second-degree burglary, and two counts of felonious larceny. The trial court, in its preliminary instructions to the jury, informed the prospective jurors, without objection by defendant, that defendant had pled guilty to all of the charged offenses. Thus, the trial court had already found a factual basis for defendant's pleas of guilty.

Turning now to the evidence of defendant's intent, we hold that the evidence presented during the capital sentencing proceeding only served to further support defendant's guilt of the sexual offenses and his underlying intent to commit such offenses at the time he broke into and entered the Hudsons' apartment. Dr. Vogelsang and Dr. Alexander both testified that the purpose for which defendant entered the Hudson home was to have sex. In addition, the State presented defendant's statement to law enforcement officers in which defendant said that he entered the apartment because he "wanted the sex."

Because there was no issue regarding defendant's intent when he entered the Hudsons' home, the phrase "sexual offense" did not have to be defined. *See State v. Robbins*, 99 N.C. App. 75, 79, 392 S.E.2d 449, 452 (where the evidence raised an issue regarding defendant's intent when he entered the victim's house, trial court's failure to

STATE v. WILKINSON

[344 N.C. 198 (1996)]

define rape in burglary instruction held no plain error based upon review of the entire record), *aff'd*, 327 N.C. 628, 398 S.E.2d 331 (1990) *(per curiam)*; *see also State v. Simpson*, 299 N.C. 377, 384, 261 S.E.2d 661, 665 (1980) (trial court's failure to define larceny in burglary instruction held no error where there was no direct issue or contention that the taking was for some purpose other than a felonious intent to steal). This assignment of error is overruled.

## VI.

[6] By his next assignment of error, defendant contends that the trial court erred by denying his pretrial motion to conduct *voir dire* regarding prospective jurors' beliefs about parole eligibility. This Court has consistently decided this issue against defendant's position. *State v. Chandler*, 342 N.C. 742, 749-50, 467 S.E.2d 636, 640 (1996); *State v. Powell*, 340 N.C. 674, 687-88, 459 S.E.2d 219, 225 (1995), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 688 (1996); *State v. Price*, 337 N.C. 756, 762-63, 448 S.E.2d 827, 831 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 224 (1995); *State v. Payne*, 337 N.C. 505, 516, 448 S.E.2d 93, 99 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 292 (1995). "As we explained in *Payne*, the recent decision in *Simmons v. South Carolina*, —— U.S. ——, 129 L. Ed. 2d 133 (1994), does not affect our position on this issue when, as here, the defendant remains eligible for parole if given a life sentence. *Payne*, 337 N.C. at 516-17, 448 S.E.2d at 99-100." *Chandler*, 342 N.C. at 750, 467 S.E.2d at 640. We continue to adhere to our prior rulings on this issue. This assignment of error is overruled.

## VII.

[7] Defendant next contends that the trial court's instruction on the (e)(9) "especially heinous, atrocious, or cruel" aggravating circumstance was unconstitutionally vague, offering no guidance to the sentencing jury. N.C.G.S. § 15A-2000(e)(9). Specifically, defendant argues that the limiting instruction set forth below was insufficient to guide the jurors in their decision-making:

> This murder must have been especially heinous, atrocious, or cruel. And not every murder is especially so. For this murder to have been especially heinous, atrocious, or cruel, any brutality which was involved in it must have exceeded that which is normally present in any killing. Or this murder must have been a conscienceless or pitiless crime which was unnecessarily tortuous [sic] to the victim.

Defendant also argues that the use of the disjunctive with the narrowing phrases is fatal to the constitutionality of the instruction. Finally, defendant argues that the inclusion of the instruction on "depravity," which was requested by defendant, rendered the instruction vague and arbitrary.

This Court has previously addressed and rejected each of these contentions. *See State v. Sexton,* 336 N.C. 321, 372-73, 444 S.E.2d 879, 908, *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 429 (1994); *State v. Syriani,* 333 N.C. 350, 390-92, 428 S.E.2d 118, 140-41, *cert. denied,* 510 U.S. 948, 126 L. Ed. 2d 341 (1993). Defendant has offered no new argument persuading this Court to overturn established precedent. "Because these jury instructions incorporate narrowing definitions adopted by this Court and expressly approved by the United States Supreme Court, or are of the tenor of the definitions approved, we reaffirm that these instructions provide constitutionally sufficient guidance to the jury." *Syriani,* 333 N.C. at 391-92, 428 S.E.2d at 140-41. This assignment of error is overruled.

## VIII.

[8] Defendant also assigns error to the trial court's submission of the (e)(4) aggravating circumstance that, with respect to Judy and Larry Hudson, defendant committed their murders "for the purpose of avoiding or preventing a lawful arrest." N.C.G.S. § 15A-2000(e)(4). Defendant contends that this aggravating circumstance was not supported by the evidence. However, our review of the record discloses that the circumstances leading up to the murders of Judy and Larry Hudson based upon defendant's statement to police investigators support the trial court's submission of this aggravating circumstance to the jury.

This Court has approved the submission of G.S. § 15A-2000(e)(4) to the jury when there is evidence that one of the purposes behind the killing was the desire by the defendant to avoid detection and apprehension of some underlying crime as opposed to submitting it only if the killing took place *during* an escape from custody of lawful arrest situations. In *State v. Goodman,* 298 N.C. 1, 257 S.E.2d 569 [1979], we held that evidence of a death is alone insufficient for submission to the jury of this factor and that such evidence must be coupled with "evidence from which the jury can infer that at least one of the purposes motivating the killing was defendant's desire to avoid subsequent detection and apprehension for his crime." *Id.* at 27, 257

S.E.2d at 586. *See State v. Hutchins,* 303 N.C. 321, 279 S.E.2d 788 (1981); *State v. Barfield,* 298 N.C. 306, 259 S.E.2d 510 [(1979), *cert. denied,* 448 U.S. 907, 65 L. Ed. 2d 1137 (1980)].

*State v. Oliver,* 309 N.C. 326, 350, 307 S.E.2d 304, 320 (1983).

In the case at bar, there is plenary evidence tending to show that defendant's motivation for killing Judy and Larry Hudson was based upon his "desire to avoid subsequent detection and apprehension," *Goodman,* 298 N.C. at 27, 257 S.E.2d at 586, for killing Chrystal Hudson. After defendant killed Chrystal Hudson and realized that she was dead, he began sexually assaulting her. Defendant stated in his confession to the police that

> [a]fter that, after I was doing that for awhile, I realized[] that there might be some other people in the house. I didn't think of that, maybe she was married, maybe there was a boyfriend in the bedroom, I wasn't thinking. So I went into the bedroom and I saw the other female, and a boy. I was drunk, and I didn't realize how high I was. I didn't think about that, I slugged them both.
>
> . . . .
>
> I just went in [Judy Hudson's bedroom], and I saw them, and I was like[,] oh man, if they wake up and see me in here, I still haven't had my jocks off yet. So, I just slugged them too.

Later in his confession, defendant stated that after he was unable to penetrate Chrystal Hudson, "the thought hit me, man, somebody else might have come in the apartment, so I started looking around." He looked in one bedroom and saw that no one was there. When defendant saw Judy and Larry Hudson in the other bedroom, he went back to the living room and got the bowling pin. Defendant told investigators that he hit Judy Hudson enough times to kill her because he figured "the other girl" was dead. Defendant left the apartment after committing the murders and then realized that he had left the lightbulb that he had used to sexually assault Judy Hudson and the bowling pin that he had used to murder the three victims in the apartment. During his confession, defendant stated:

> I went all the way back to my car, hopped the fence, went through the backyard, hopped the other fence, when I got there, I was thinking so I had to go all the way back, so I went back through the back, hopped the fence, went back through the backyard, went back[,] looked around, found [the bowling pin] I left

laying [sic] in the bedroom on the bed. And the light bulb was in the chair.

Sgt. Calfee: Why did you go back and get it for [sic]?

[Defendant]: Fingerprints.

Sgt. Calfee: Were you conscience [sic] of fingerprints the whole time you were in there.

[Defendant]: Kind of. I remember being in the bathroom and I washed my hands, [a]nd I think I washed off the faucets. And then on the way out, I wasn't really, but I took my shirt and I wiped the screen door . . . .

All of this evidence establishes that defendant intended to and took every precaution possible to avoid detection and arrest for his crimes. It is entirely reasonable that a jury could infer that defendant's purpose was to eliminate two potential witnesses against him. Having recounted the evidence supporting submission of the (e)(4) aggravating circumstance that the killings of Judy Hudson and Larry Hudson were committed for the purpose of avoiding a lawful arrest, the trial court properly submitted this aggravating circumstance. Thus, this assignment of error is overruled.

## IX.

[9] By defendant's next assignment of error, defendant contends that the trial court erred in submitting and allowing the jury to consider and find two aggravating circumstances based upon the same evidence. Specifically, defendant contends that the trial court should not have instructed the jury on the (e)(5) aggravating circumstance that the murder was "committed while the defendant was engaged . . . in the commission of . . . a . . . burglary," N.C.G.S. § 15A-2000(e)(5), *and* the (e)(11) aggravating circumstance that the "murder for which the defendant stands convicted was part of a course of conduct in which the defendant engaged and which included the commission by the defendant of other crimes of violence against another person or persons," N.C.G.S. § 15A-2000(e)(11). Defendant argues that for each murder, the evidence supporting the (e)(11) course of conduct aggravating circumstance was duplicative of evidence supporting the (e)(5) aggravating circumstance. According to defendant in his brief, "It would be reasonable for one or more jurors to consider the burglary to be a 'crime of violence' that supported both of these aggravating circumstances." Defendant also contends that the trial court's

**STATE v. WILKINSON**

[344 N.C. 198 (1996)]

instruction on the (e)(11) course of conduct aggravating circumstance failed to inform the jury that it could not use the same evidence to find more than one aggravating circumstance.

Defendant made no objection to the submission of either aggravating circumstance at trial and raised no constitutional claim regarding "double counting" at trial. Consequently, the trial court did not have the opportunity to consider or rule on these issues. N.C. R. App. P. 10(b)(1). Generally, under these circumstances, defendant would be required to show plain error. However, Rule 10(c)(4) provides:

> In criminal cases, a question which was not preserved by objection as noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error *where the judicial action questioned is specifically and distinctly contended to amount to plain error.*

N.C. R. App. P. Rule 10(c)(4) (emphasis added). Because defendant did not object at trial and then failed to allege plain error on appeal, he has failed to properly preserve this issue for appeal. *State v. Moseley*, 338 N.C. 1, 36, 449 S.E.2d 412, 433-34 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 738 (1995). Notwithstanding defendant's failure to preserve this issue for appeal, "in the exercise of our discretion under Rule 2 of the Rules of Appellate Procedure and following the precedent of this Court electing to review unpreserved assignments of error in capital cases," *State v. Gregory*, 342 N.C. 580, 586, 467 S.E.2d 28, 32 (1996), we elect to consider defendant's contention under a plain error analysis.

It is error to submit two aggravating circumstances resting on the same evidence. *State v. Quesinberry*, 319 N.C. 228, 239, 354 S.E.2d 446, 453 (1987). "The submission of more than one aggravating circumstance supported by the same evidence 'amount[s] to an unnecessary duplication of the circumstances enumerated in the statute, resulting in an automatic cumulation of aggravating circumstances against the defendant.' " *State v. Conaway*, 339 N.C. 487, 530, 453 S.E.2d 824, 851 (quoting *Goodman*, 298 N.C. at 29, 257 S.E.2d at 587), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 153 (1995). "Where, however, there is separate evidence supporting each aggravating circumstance, the trial court may submit both 'even though the evidence supporting each may overlap.' " *State v. Rouse*, 339 N.C. 59, 97, 451 S.E.2d 543, 564 (1994) (quoting *State v. Gay*, 334 N.C. 467, 495, 434 S.E.2d 840, 856 (1993)), *cert. denied*, —— U.S.——, 133 L. Ed. 2d 60 (1995).

**STATE v. WILKINSON**

[344 N.C. 198 (1996)]

"Aggravating circumstances are not considered redundant absent a *complete* overlap in the evidence supporting them." *Moseley*, 338 N.C. at 54, 449 S.E.2d at 444 (emphasis added).

This Court has previously upheld the submission of both the (e)(5) and (e)(11) aggravating circumstances. *E.g.*, *State v. Gibbs*, 335 N.C. 1, 61, 436 S.E.2d 321, 355-56 (1993) (course of conduct aggravating circumstance did not rely on proof of burglary when the evidence tended to show that the defendant broke into the home of one of the victims, shot one victim, and then committed acts of violence against two others by shooting and killing them), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 881 (1994). Furthermore, the trial court's submission of the (e)(5) and (e)(11) aggravating circumstances for each murder in the instance case did not violate *Quesinberry* because there was substantial, separate evidence supporting each of these aggravating circumstances. Submission of the (e)(5) aggravating circumstance was based upon evidence that tended to show that defendant broke into and entered the Hudsons' apartment in the middle of the night with the intent to commit a sexual offense. The evidence supporting the (e)(11) course of conduct aggravating circumstance is entirely different from the evidence recited above supporting the (e)(5) aggravating circumstance. The evidence that defendant engaged in a course of conduct involving violence to another person or persons was that defendant murdered three victims, committed four first-degree sexual offenses, and committed attempted first-degree rape. "Evidence that a defendant killed more than one victim is sufficient to support the submission of the course of conduct aggravating circumstance." *Conaway*, 339 N.C. at 530, 453 S.E.2d at 851.

In light of the number of obviously violent crimes defendant committed after he broke into and entered the Hudsons' apartment, it is unlikely that the jury considered burglary to be a "crime of violence." There was independent evidence to support each aggravating circumstance. *See Rouse*, 339 N.C. at 99, 451 S.E.2d at 564.

[10] Defendant also contends that the trial court erred in not instructing the jury that it could not consider the same evidence in support of both aggravating circumstances. "This Court has held that the trial court should instruct the jury that it cannot use the same evidence as a basis for finding more than one aggravating circumstance." *Conaway*, 339 N.C. at 530, 453 S.E.2d at 851. Defendant, however, did not request such an instruction, failed to object to the trial court's failure to so instruct at trial, and did not allege plain error on appeal.

Again, in our discretion under Rule 2 of the North Carolina Rules of Appellate Procedure, we review for plain error, which requires defendant to show that the error was so fundamental that another result would probably have been obtained absent the error. *Odom*, 307 N.C. at 661, 300 S.E.2d at 378-79.

We conclude that the trial court's failure to instruct the jury that it could not use the same evidence to support more than one aggravating circumstance does not rise to the level of plain error. In light of the severity of the murders, the commission of sexual offenses, and the fact that there was independent evidence supporting each aggravating circumstance, defendant has not shown that any error would have affected the outcome. This assignment of error is therefore overruled.

## X.

[11] In a similar assignment of error, defendant contends that the trial court erred by submitting and allowing the jury to consider the course of conduct aggravating circumstance, N.C.G.S. § 15A-2000(e)(11), as to the murders of Judy Hudson and Larry Hudson *and* the aggravating circumstance that the murders were "committed for the purpose of avoiding or preventing a lawful arrest," N.C.G.S. § 15A-2000(e)(4). As in the previous issue, defendant argues that the trial court's submission of both aggravating circumstances allowed the jury to unconstitutionally "double count" aggravating circumstances based upon the same evidence.

Defendant did not object to the trial court's submission of the course of conduct aggravating circumstance, but did object to the submission of the (e)(4) aggravating circumstance. His objection, however, was based upon his contention that the evidence did not support its submission, not because the circumstance was based upon the same evidence as the course of conduct aggravating circumstance. Because we are obligated to independently assure that the record supports the aggravating circumstances submitted during trial, we will, in our discretion, review this issue for plain error.

Defendant relies on *State v. Howell*, 335 N.C. 457, 439 S.E.2d 116 (1994). There, this Court stated that the trial court should not have submitted the aggravating circumstances that (1) the murder was committed while defendant was engaged in the commission of burglary, and (2) the murder was committed for pecuniary gain. This decision was based upon our conclusion that the two aggravating cir-

cumstances were supported by the same evidence because the undisputed evidence established that the motive for the burglary was pecuniary gain. *Id.* at 474-75, 439 S.E.2d at 126. We find defendant's reliance on *Howell* to support his position misplaced.

It is well settled that " 'there is no error in submitting multiple aggravating circumstances provided that the inquiry prompted by their submission is directed at distinct aspects of the defendant's character or the crime for which he is to be punished.' " *State v. Green*, 321 N.C. 594, 610, 365 S.E.2d 587, 596-97 (quoting *Hutchins*, 303 N.C. at 354, 279 S.E.2d at 808), *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988). "The circumstance of violent course of conduct directs the jury's attention to the factual circumstances of defendant's crimes." *Id.* at 610, 365 S.E.2d at 597. However, "[t]he aggravating circumstance that the murder was for the purpose of avoiding or preventing a lawful arrest force[s] the jury to weigh in the balance defendant's motivation in pursuing his course of conduct." *Hutchins*, 303 N.C. at 355, 279 S.E.2d at 809.

As we previously stated, submission of the (e)(11) course of conduct aggravating circumstance was supported by evidence that defendant killed more than one person. *Conaway*, 339 N.C. at 530, 453 S.E.2d at 851. Also as we have previously discussed, there was plenary evidence to support submission of the (e)(4) aggravating circumstance based upon defendant's motivation for killing Judy and Larry Hudson in order to "avoid subsequent detection and apprehension." *Goodman*, 298 N.C. at 27, 257 S.E.2d at 586.

Based upon the separate and independent evidence supporting each of these aggravating circumstances, the trial court did not err in submitting both of these aggravating circumstances. This assignment of error is overruled.

## XI.

[12] Next, defendant assigns error to the trial court's denial of his motion for a special instruction on mitigation and its subsequent instruction to the jury on mitigation according to the North Carolina pattern jury instruction. Defendant claims that because " 'mitigation' is not a commonly-used word," the jurors needed a special instruction so that they would be able to understand the term. He argues that the instruction given by the trial court was not in "substantial conformity" with the one proposed by defendant because the jurors "would be no more likely to understand the meaning of the term 'extenuating'

than the term 'mitigating.' " He suggests that using the words "something . . . that might cause you to lessen or reduce Mr. Wilkinson's punishment" would communicate what the term "mitigation" means to the jury. Defendant also claims that the pattern jury instruction on mitigation focuses only on the circumstances of the crime and does not inform the jurors that they should also consider the characteristics of the criminal.

The trial court instructed the jury as follows:

A mitigating circumstance is a fact or group of facts which do not constitute a justification or excuse for a killing or reduce it to a lesser degree of crime than first degree murder, but which may be considered as extenuating or reducing the moral culpability of the killing, or making it less deserving of extreme punishment than other first degree murders.

Our law identifies several possible mitigating circumstances. However, in considering issue two, it would be your duty to consider as a mitigating circumstance any aspect of the defendant's character or record and any of the circumstances of this murder that the defendant contends is a basis for a sentence less than death and any other circumstances arising from the evidence which you deem to have mitigating value.

The defendant has the burden of persuading you that a given mitigating circumstance exists. The existence of any mitigating circumstance must be established by a preponderance of the evidence; that is, the evidence taken as a whole must satisfy you, not beyond a reasonable doubt, but simply satisfy you that any mitigating circumstance exists.

"It is well settled in this jurisdiction that in determining the propriety of the trial judge's charge to the jury, the reviewing court must consider the instructions in their entirety, and not in detached fragments." *State v. Wright*, 302 N.C. 122, 127, 273 S.E.2d 699, 703 (1981). "It is [also] well settled that when a request is made for a specific instruction that is supported by the evidence and is a correct statement of the law, *the court, although not required to give the requested instruction verbatim, must charge the jury in substantial conformity therewith.*" *State v. Holder*, 331 N.C. 462, 474, 418 S.E.2d 197, 203 (1992) (emphasis added).

Both parties acknowledge that defendant presented evidence that the jury could consider in mitigation. Defendant's evidence tended to

show that he had had little trouble with law enforcement in the past, that he grew up in an abusive and neglectful home, and that the crimes were out of character for him. Therefore, assuming, without deciding, that the proposed instruction was a correct statement of the law, resolution of the question before us focuses on whether the instruction given was in "substantial conformity" with the proposed instruction. We hold that it was.

As quoted above, the trial court instructed the jurors that "mitigation" is "a fact or group of facts . . . which may be considered as extenuating or *reducing the moral culpability of the killing, or making it less deserving of extreme punishment* than other first degree murders." (Emphasis added.) We find the language recommended in the pattern jury instruction to be virtually identical to and in "substantial conformity" with the language defendant proposed in his instruction.

Defendant further argues that by focusing the jury's attention on the killing itself, this instruction limited the jury's ability to consider defendant's character and background as a basis for a sentence less than death. In *Robinson*, 336 N.C. at 122, 443 S.E.2d at 328, this Court rejected similar challenges to this same definition of "mitigating." In *Robinson*, the jury was given virtually the same definition of a "mitigating circumstance" and was also further instructed to consider any aspect of the defendant's character and record and any circumstances of the murder that the defendant contended was a basis for a sentence less than death when determining mitigating circumstances. *Id.* at 122, 443 S.E.2d at 327. The *Robinson* jury was also further instructed to consider not only the statutory mitigating circumstances, but any others which it deemed to have mitigating value. This Court held that

the instructions as given, which are virtually identical to the North Carolina Pattern Jury Instructions, are a correct statement of the law of mitigation. The instructions here are identical to those instructions that we held in *State v. Artis* to be "a correct statement of the law." 325 N.C. [278,] 326, 384 S.E.2d [470,] 497 [(1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990)]. They did not preclude the jury from considering any aspect of defendant's character which he may have presented as a basis for a sentence less than death. Defendant has shown no basis for relief on this assignment of error.

*Robinson,* 336 N.C. at 122, 443 S.E.2d at 328; *see Conaway,* 339 N.C. at 534, 453 S.E.2d at 854. We conclude that the instruction given in the instant case is virtually identical to those upheld by this Court in *Robinson* and *Conaway.* The instruction did not preclude the jury from considering any aspect of defendant's character or background or any of the circumstances of the killing that defendant may have presented as a basis for a sentence less than death. This assignment of error is overruled.

## XII.

**[13]** Defendant next assigns error to the jury's failure to find several nonstatutory mitigating circumstances. As to each murder, the trial court submitted fifteen nonstatutory mitigating circumstances. The jury found the existence of and mitigating value for two of the fifteen nonstatutory mitigating circumstances:  (1) that "defendant con-fessed to the police authorities" for the murders under review, and (2) that "defendant voluntarily removed himself from society after the crimes by surrendering and confessing and then pleading guilty to all offenses." Of the remaining nonstatutory mitigating circumstances submitted, defendant challenges the jury's failure to find the follow-ing nonstatutory mitigating circumstances to exist and to have miti-gating value:  (1) that defendant grew up in a troubled and broken home, (2) that defendant was abused by his mother, (3) that defend-ant grew up as a neglected child, (4) that defendant's formative years were spent in a substantially economically deprived and loveless home, (5) that defendant had a good military record and that he enjoyed a reputation for being a law-abiding citizen in the military community, and (6) that defendant willingly assumed responsibility for the crimes and expressed remorse for his conduct.

Defendant contends that because there was uncontradicted evi-dence to support a finding by the jury of the challenged nonstatutory mitigating circumstances, the jury's failure to find any of these cir-cumstances deprived him of his state and federal constitutional rights to be free from cruel or unusual punishment and to due process. He concedes that this issue has been decided against him by this Court, but argues that the Court's position is no longer valid in light of the decisions of *Penry v. Lynaugh,* 492 U.S. 302, 106 L. Ed. 2d 256 (1989), and *McKoy v. North Carolina,* 494 U.S. 433, 108 L. Ed. 2d 369 (1990).

This same issue raised by defendant in this case has been raised previously and rejected by this Court in *State v. Gregory,* 340 N.C. 365, 459 S.E.2d 638 (1995), *cert. denied,* —— U.S. ——, 134 L. Ed. 2d

STATE v. WILKINSON

[344 N.C. 198 (1996)]

478 (1996). In considering the defendant's claim in *Gregory* that "there is no constitutionally valid basis for treating nonstatutory mitigating circumstances any differently than statutory mitigating circumstances," this Court said:

> This Court rejected similar arguments to those raised by defendant in *State v. Williams*, 339 N.C. 1, 452 S.E.2d 245 [(1994), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 61 (1995)]. This Court considered both *Penry* and *McKoy* in reaching its conclusion that the pattern instructions for the consideration of nonstatutory mitigating circumstances are proper. This Court stated:
>
>> While a juror may not be precluded from considering evidence proffered by defendant as a basis for a sentence less than death, *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973 (1978); *Penry v. Lynaugh*, 492 U.S. 302, 106 L. Ed. 2d 256 (1989); *Eddings v. Oklahoma*, 455 U.S. 104, 71 L. Ed. 2d 1 (198[2]); *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990), a jury is not required to agree with a defendant that the evidence he proffers in mitigation is, in fact, mitigating, *Raulerson v. Wainwright*, 732 F.2d 803, 807, *reh'g denied*, 736 F.2d 1528 (11th Cir.), *cert. denied*, 469 U.S. 966, 83 L. Ed. 2d 302 (1984), unless the legislature has declared it to be mitigating as a matter of law. *State v. Fullwood*, 323 N.C. 371, 373 S.E.2d 518 (1988), *sentence vacated*, 494 U.S. [1022], 108 L. Ed. 2d 602 (1990), *on remand*, 327 N.C. 473, 397 S.E.2d 226 (1990), *on remand*, 329 N.C. 233, 404 S.E.2d 842 (1991).
>
> *State v. Williams*, 339 N.C. at 43-44, 452 S.E.2d at 270-71.

*Gregory*, 340 N.C. at 420-21, 459 S.E.2d at 670.

Thus, this Court has considered defendant's position in light of *Penry* and *McKoy* and has overruled defendant's contentions. Defendant has offered no reason or basis for this Court to overrule its previous decision. This assignment of error is overruled.

### XIII.

[14] Defendant next contends that the trial court committed plain error in violation of his state and federal constitutional rights by failing to repeat the full set of instructions on Issues Two, Three, and Four related to the finding of and weighing of mitigating circumstances with respect to each victim. He makes this assertion despite the fact that the instructions on Issues Two, Three, and Four were identical for each victim.

STATE v. WILKINSON

[344 N.C. 198 (1996)]

We note that defendant did not object to the charge as given by the trial court; in fact, our review of the transcript reveals that defendant, through his attorney, agreed at the charge conference to have the instruction given as it was. During the charge conference, the following exchange took place:

> THE COURT: All right. Let me ask you this, and then we'll stop: With the exception of the differences in the aggravating circumstances as they apply, noting that the defendant has objected, the charge to the jury will be identical as to the remaining issues. Your mitigators will be the same in each case. Whatever the charge is will be the same.
>
> What is the position of the defendant in particular in respect to if I give a comprehensive instruction as to the first issue, probably with Judy Hudson's matter, and only repeat the aggravating circumstances as they apply followed up by Chrystal Hudson and Larry Hudson—
>
> MR. CARTER: Rather than starting from the beginning with each one?
>
> THE COURT: No. I will give a complete instruction as to one of them, probably Judy Hudson, because she has a set of four aggravating circumstances. And give a complete instruction as to all the issues as to the first one. And then come back and give a complete set of instructions as to the aggravating circumstances as they apply to the next count, but ask the jury to recall the instructions as to issues two and three and four, as I have already fully instructed them. And then repeat the aggravating circumstances that apply to that particular defendant (sic) and ask them to recall the mitigating circumstances as I have instructed them. They're equally applicable in this case. I will give a full set of instructions, unless—but I would like the consent of the defendant to do it that way. The charge will be much shorter.
>
> MR. CARTER: That will be fine.
>
> THE COURT: And there's no reason, particularly, to repeat the mitigating circumstances in the entire charge. But I'll only do it if the defendant consents that way.
>
> MR. CARTER: We'll consent.

Although defendant labels this assignment of error as "plain error," it is actually invited error because, as the transcript reveals,

defendant consented to the manner in which the trial court gave the instructions to the jury. "The defendant will not be heard to complain on appeal when the trial court has instructed adequately on the law and in a manner requested by the defendant." *State v. Weddington*, 329 N.C. 202, 210, 404 S.E.2d 671, 677 (1991). "If there was error in the charge, it was invited error and we shall not review it." *Harris*, 338 N.C. at 150, 449 S.E.2d at 380.

We note that "[t]he trial court is not required to frame its instructions with any greater particularity than is necessary to enable the jury to understand and apply the law to the evidence bearing upon the elements of the crime charged." *Weddington*, 329 N.C. at 210, 404 S.E.2d at 677. The instructions were given in conformity with defendant's assent, and the manner in which the trial judge instructed the jury was not erroneous.

That notwithstanding, defendant can show no prejudice as a result of the manner in which the trial court instructed the jury. All of the possible mitigating circumstances are listed on the Issues and Recommendation as to Punishment forms as to each victim. The trial court gave complete instructions to the jury as to Judy Hudson and then only instructed as to the differing aggravating circumstances that applied to each victim. The trial court told the jury how the instructions would be done and explained the reasons for instructing in that manner. At the conclusion of the instructions, the trial court reminded the jury that the complete instruction on Issues Two, Three, and Four applied to all three victims. Thus, the trial court's instructions were complete, and there is nothing in the record to show that the jurors did not carefully consider the mitigating circumstances or that they were confused or misled by the charge. This assignment of error is overruled.

## XIV.

[15] Next, defendant complains in this assignment of error that the jury's failure to find the (f)(6) statutory mitigating circumstance that "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired," N.C.G.S. § 15A-2000(f)(6), "render[s] the sentences of death unreliable and violative of defendant's constitutional right to be free from cruel or unusual punishment[]."

It is well settled that with respect to statutory mitigating circumstances, "the jury is free to disbelieve the evidence or to conclude

that the evidence is not convincing." *Rouse*, 339 N.C. at 108, 451 S.E.2d at 571. "The United States Supreme Court cases and our cases require merely that the sentencing jury not be precluded from considering evidence which may have mitigating value." *Id.* at 108, 451 S.E.2d at 570.

According to defendant, the evidence supporting the (f)(6) "diminished capacity" statutory mitigating circumstance showed that he was a compulsive voyeur under the influence of alcohol; that he was unable to resist the urge to "peep"; and that once he entered the Hudsons' apartment, he was unable to stop himself from committing the crimes. The trial court instructed jurors that they would find the (f)(6) mitigating circumstances "if you find that the defendant had drunk a sufficient quantity of alcohol, that the defendant was under the influence of that alcohol, and also suffered from voyeurism, and that this impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." Thus, the jury was not precluded from considering the evidence of diminished capacity that defendant offered in mitigation; therefore, defendant has suffered no constitutional violation.

We note that defendant attempts also to argue that the trial court's instruction unconstitutionally restricted the jury's consideration of this mitigating circumstance. However, "the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal." N.C. R. App. P. 10(a). Therefore, defendant has not properly presented this issue for appellate review because this issue bears no relation to the assignment of error set out in the record. This assignment of error is overruled.

## XV.

[16] By his next assignment of error, defendant contends that the trial court erred in allowing death qualification by excusing for cause prospective jurors Latoya Johnson, John Harry, and Patricia Locklear, all of whom expressed during *voir dire* an unwillingness to impose the death penalty. He argues that there was an insufficient showing that these prospective jurors were not qualified to sit on the jury.

"The primary goal of the jury selection process is to ensure selection of a jury comprised only of persons who will render a fair and impartial verdict." *Conaway*, 339 N.C. at 511, 453 S.E.2d at 839. "A challenge for cause to an individual juror may be made by any party

on the ground that the juror . . . [a]s a matter of conscience, regardless of the facts and circumstances, would be unable to render a verdict with respect to the charge in accordance with the law of North Carolina." N.C.G.S. § 15A-1212(8) (1988). "The test for determining whether a prospective juror may be properly excused for cause for his views on the death penalty is whether those views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *State v. Green*, 336 N.C. 142, 158, 443 S.E.2d 14, 24 (quoting *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985)), *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 547 (1994); *accord State v. Davis*, 325 N.C. 607, 621-22, 386 S.E.2d 418, 425 (1989), *cert. denied,* 496 U.S. 905, 110 L. Ed. 2d 268 (1990).

"Prospective jurors with reservations about capital punishment must be able to 'state clearly that they are willing to temporarily set aside their beliefs in deference to the rule of law.' " *Conaway*, 339 N.C. at 511, 453 S.E.2d at 839 (quoting *Lockhart v. McCree*, 476 U.S. 162, 176, 90 L. Ed. 2d 137, 149 (1986)), *quoted in State v. Brogden*, 334 N.C. 39, 43, 430 S.E.2d 905, 907-08 (1993). However, "[w]e have recognized that a prospective juror's bias may not always be 'provable with unmistakable clarity [and,] [i]n such cases, reviewing courts must defer to the trial court's judgment concerning whether the prospective juror would be able to follow the law impartially.' " *Green*, 336 N.C. at 159, 443 S.E.2d at 24 (quoting *Davis*, 325 N.C. at 624, 386 S.E.2d at 426) (alteration in original). "The ruling of the trial court will not be disturbed absent abuse of discretion." *Id.*

Here, the trial court did not abuse its discretion in excusing the prospective jurors for cause. Our review of the record indicates that each of the three prospective jurors excused for cause after answering the prosecutor's questions stated unequivocally that he or she would be unable to follow the law and recommend a sentence of death, even if that was what the facts and circumstances required. Defendant has pointed to nothing in the record to support his contention that "there was an insufficient showing that these jurors were not qualified to sit." Therefore, it was not error for the trial court to allow the State's challenges for cause of prospective jurors Johnson, Harry, and Locklear. This assignment of error is overruled.

## XVI.

[17] In a related assignment of error, defendant contends that the trial court erred in allowing the prosecution to peremptorily chal-

lenge several prospective jurors who showed reluctance about imposing the death penalty, in violation of defendant's state and federal constitutional rights to a fair and impartial jury, to a jury selected from a fair cross-section of the community, and to be free from cruel and unusual punishment. He concedes that this Court has rejected his argument several times. *Conaway*, 339 N.C. at 512, 453 S.E.2d at 840; *State v. Jones*, 336 N.C. 229, 260, 443 S.E.2d 48, 56, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 423 (1994); *State v. Bacon*, 326 N.C. 404, 414, 390 S.E.2d 327, 333 (1990); *State v. Allen*, 323 N.C. 208, 222, 372 S.E.2d 855, 863 (1988), *sentence vacated on other grounds*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990). Defendant has offered no basis for this Court to overrule its previous decisions. This assignment of error is overruled.

## XVII.

[18] Having concluded that defendant's capital sentencing proceeding was free from prejudicial error, we turn to the duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. It is our duty in this regard to ascertain (1) whether the record supports the jury's findings of the aggravating circumstances on which the sentences of death were based; (2) whether the death sentences were entered under the influence of passion, prejudice, or other arbitrary considerations; and (3) whether the death sentences are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2).

In this case, with respect to all of the murders, the jury found as aggravating circumstances that the murder was committed by the defendant while the defendant was engaged in the commission of first-degree burglary, N.C.G.S. § 15A-2000(e)(5), and that the murder was part of a course of conduct in which the defendant committed other crimes of violence against another person or persons, N.C.G.S. § 15A-2000(e)(11). In addition, with respect to the murders of Judy Hudson and Larry Hudson, the jury found as an aggravating circumstance that the murder was committed by the defendant for the purpose of avoiding a lawful arrest. N.C.G.S. § 15A-2000(e)(4). Finally, with respect to the murders of Judy Hudson and Chrystal Hudson, the jury found as an aggravating circumstance that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9). We have thoroughly examined the record, transcripts, and briefs in the present case and conclude that the evidence fully supports all of the aggravating circumstances found by the jury. Further, we find no indication

STATE v. WILKINSON

[344 N.C. 198 (1996)]

that the sentences of death were imposed under the influence of passion, prejudice, or any other arbitrary consideration. We must turn then to our final statutory duty of proportionality review.

"In our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate." *State v. Burke*, 343 N.C. 129, 162, 469 S.E.2d 901, 919 (1996). We have found the death penalty disproportionate in seven cases. *Benson*, 323 N.C. 318, 372 S.E.2d 517; *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). We conclude that this case is not substantially similar to any case in which this Court has found the death penalty disproportionate. Most notably, in all the cases where the death sentence has been determined to be disproportionate, only one person has been murdered by the defendant. In contrast, this case involved a triple murder, multiple convictions of serious sexual offenses, and multiple convictions of burglary and larceny.

It is also proper to compare this case to those where the death sentence was found proportionate. *[State v.] McCollum*, 334 N.C. [208,] 244, 433 S.E.2d [144,] 164 [(1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895 (1994)]. Although we have repeatedly stated that we review all of the cases in the pool when engaging in our statutory duty, it is worth noting again that "we will not undertake to discuss or cite all of those cases each time we carry out our duty." *Id.*

*Burke*, 343 N.C. at 162, 469 S.E.2d at 918. This Court has upheld a death sentence when only the course of conduct aggravating circumstance has been found by the jury. This Court has also upheld death sentences when the only circumstance found was the especially heinous, atrocious, or cruel aggravating circumstance. *State v. Lynch*, 340 N.C. 435, 484, 459 S.E.2d 679, 705 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 558 (1996); *see Syriani*, 333 N.C. 350, 428 S.E.2d 118; *State v. Huffstetler*, 312 N.C. 92, 322 S.E.2d 110 (1984), *cert. denied*, 471 U.S. 1009, 85 L. Ed. 2d 169 (1985); *State v. Martin*, 303 N.C. 246, 278 S.E.2d 214, *cert. denied*, 454 U.S. 933, 70 L. Ed. 2d

STATE v. WILKINSON

[344 N.C. 198 (1996)]

240 (1981). Moreover, "[t]his Court has held that the fact that a defendant is a multiple murderer stands as a 'heavy' factor against defendant when determining the proportionality of a death sentence." *Lynch*, 340 N.C. at 485, 459 S.E.2d at 705; *see State v. McHone*, 334 N.C. 627, 648, 435 S.E.2d 296, 308 (1993), *cert. denied*, —— U.S. ——, 128 L. Ed. 2d 220 (1994); *State v. Robbins*, 319 N.C. 465, 529, 356 S.E.2d 279, 316, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987). "This Court has affirmed the death penalty in several cases involving death or serious injury to one or more persons other than the murder victim." *McHone*, 334 N.C. at 648, 435 S.E.2d at 308; *see Robbins*, 319 N.C. 465, 356 S.E.2d 279; *State v. Noland*, 312 N.C. 1, 320 S.E.2d 642 (1984), *cert. denied*, 469 U.S. 1230, 84 L. Ed. 2d 369 (1985); *State v. McDougall*, 308 N.C. 1, 301 S.E.2d 308, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 173 (1983); *Pinch*, 306 N.C. 1, 292 S.E.2d 203; *Hutchins*, 303 N.C. 321, 279 S.E.2d 788.

In the present case, the evidence tended to show that, from the very beginning to its tragic end, defendant executed a deliberate and carefully thought-out plan to fulfill certain criminal intentions to satisfy his perverted lust; that he quickly recognized and adjusted to any new obstacles or barriers to his desired goals as such appeared; that he was aware of the legal implications of his various actions; and that he took special precautions against the possibility of being apprehended by the police, including the removal of the lightbulb, bowling pin, and his fingerprints from the bathroom faucet and the screen door. The murders generally indicate depravity of mind and inhumane cruelty; they were brutal, pitiless, and conscienceless.

After reviewing the cases, we conclude that based upon the particular aggravating circumstances found by the jury during the sentencing proceeding in the instant case, the death sentences imposed are not disproportionate. We also conclude that the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence disproportionate or those in which juries have consistently returned recommendations of life imprisonment.

Having considered and rejected all of defendant's assignments of error, we hold that defendant received a fair capital sentencing proceeding, free from prejudicial error. After comparing this case to other similar cases in which the death penalty was imposed and considering both the crime and defendant, we cannot hold as a matter of law that the death sentences were disproportionate or excessive.

Therefore, the sentences of death entered against defendant must be and are left undisturbed.

NO ERROR.