STATE OF NORTH CAROLINA v. JON LEE BENSON

No. 124A86

(Filed 6 October 1988)

### 1. Criminal Law § 76.10— attack on confession—theory not used at trial

The issue of illegal arrest was not timely raised in a first degree murder prosecution where defendant did not rely upon unlawful arrest as a basis for his motion at trial to suppress his confession, it was not mentioned or argued to the trial judge, and the trial judge's order is based upon the voluntariness theory without mention of the illegality of defendant's arrest; defendant may · not swap horses after trial in order to obtain a thoroughbred on appeal.

### 2. Jury § 7.11— ambivalence toward death penalty—juror challenged for cause— no error

The trial judge did not err in allowing the State to challenge a juror for cause in a first degree murder prosecution where the juror's responses may have demonstrated an ambivalence toward the death penalty but also clearly indicated that she was unwilling or unable to follow the law and her oath.

### 3. Jury § 7.10— juror familiar with witnesses—denial of challenge for cause—no error

The trial court did not err in a prosecution for first degree murder by denying defendant's challenge for cause of a juror who knew four of the police officers who were prospective witnesses for the State where, although defendant searched diligently during voir dire to discover some indication that the juror would be partial to those witnesses, the juror unequivocally stated repeatedly that his acquaintance with the officers would not affect his verdict in any way, and there was no evidence to the contrary.

### 4. Criminal Law § 102.6— opening argument—no intervention ex mero motu—no error

The trial court did not err in a first degree murder prosecution by not intervening *ex mero motu* in the prosecutor's opening argument where the argument was a shorthand statement of the sentencing procedure in a capital case and was basically accurate, although incomplete.

### 5. Criminal Law § 135.9— nonstatutory mitigating factors—Pinch test abandoned —failure to submit nonstatutory mitigating factors—no error

In order for a defendant to succeed upon an assignment of error as to the failure to submit nonstatutory mitigating factors, the defendant must establish that the nonstatutory mitigating circumstance is one which the jury could reasonably find had mitigating value and that there is sufficient evidence of the existence of the circumstance to require it to be submitted to the jury; the failure by the trial judge to submit such nonstatutory mitigating circumstance raises federal constitutional issues and the burden is upon the State to prove that such violation was harmless beyond a reasonable doubt. *State v. Pinch,* 306 N.C. 1, is overruled to the extent that it is in conflict with this standard. The trial court here did not err by failing to submit nonstatutory mitigating

factors because the evidence did not support the factors or the factor was subsumed in mitigating circumstances which were submitted.

**6. Criminal Law § 102.6— first degree murder—prosecutor's closing argument— no intervention ex mero motu**

The prosecutor's closing argument in a prosecution for first degree murder was not so grossly egregious that the trial judge was required to interrupt the counsel absent an appropriate objection.

**7. Criminal Law § 101.4— jury's request for transcript—denied—no abuse of discretion**

The trial judge did not abuse its discretion in a first degree murder prosecution by denying the jury's request for portions of the transcript. N.C.G.S. § 15A-1233.

**8. Criminal Law §§ 135.7, 135.8— first degree murder—preservation of issues regarding aggravating circumstances**

The Supreme Court in a first degree murder prosecution declined to abandon its prior holdings on the constitutionality of pecuniary gain as an aggravating circumstance; the denial of defendant's motion for a bill of particulars requesting the State to specify aggravating circumstances upon which it intended to rely; and the denial of defendant's request to instruct the jury that defendant would receive life if the jury was unable to agree.

**9. Criminal Law § 126; Jury §§ 7.1, 7.8— first degree murder—preservation of jury issues**

The Supreme Court in a first degree murder prosecution declined to abandon its prior holdings on unanimity of jury verdict, form, and weighing of issues; lack of a cross section of the community on the trial jury; and the State's challenge to a juror because she was not a citizen.

**10. Criminal Law §§ 135, 135.9— first degree murder—preservation of issues**

The Supreme Court, in a first degree murder prosecution, declined to abandon its prior holdings regarding the constitutionality of N.C.G.S. § 15A-2000 and on requiring defendant to prove the existence of mitigating circumstances.

**11. Criminal Law § 135.9— first degree murder—mitigating circumstances—Mills argument rejected**

Defendant's argument as to the requirement of unanimity of the jury in finding mitigating circumstances in a murder prosecution was rejected.

**12. Criminal Law § 135.10— first degree murder—death sentence—disproportionate**

Although the recommendation of the death sentence in a first degree murder prosecution was not arbitrary or capricious, it was disproportionate where the conviction was based solely on the felony murder theory; there was only one aggravating factor, pecuniary gain; the jury found as mitigating factors that defendant had no significant history of prior criminal activity, that defendant was under the influence of mental or emotional disturbance, that defendant confessed and cooperated upon arrest, that he voluntarily consented to a search of his motel room, car, home, and storage bin, and that he was aban-

doned by his natural mother at an early age; and defendant pled guilty during the trial and acknowledged his wrongdoing to the jury. N.C.G.S. § 15A-2000(d)(2).

Justice FRYE concurring in the result.

Chief Justice EXUM joins in this concurring opinion.

APPEAL by defendant from judgment of death on his plea of guilty of murder in the first degree, imposed by *Watts, J.,* at the 6 January 1986 session of Superior Court, ONSLOW County. Heard in the Supreme Court 16 March 1988 and 22 August 1988.

*Lacy H. Thornburg, Attorney General, Christopher P. Brewer, Special Deputy Attorney General, William P. Hart, Assistant Attorney General, James J. Coman, Senior Deputy Attorney General, William N. Farrell, Jr., Special Deputy Attorney General, Joan H. Byers, Special Deputy Attorney General, and Barry S. McNeill, Assistant Attorney General, for the state.*

*Geoffrey C. Mangum, Malcolm Ray Hunter, Jr., Appellate Defender, and Louis D. Bilionis, Assistant Appellate Defender, for defendant.*

*E. Ann Christian and Robert E. Zaytoun, for The North Carolina Academy of Trial Lawyers, and John A. Dusenbury, Jr., for the North Carolina Association of Black Lawyers, amici curiae.*

MARTIN, Justice.

Defendant entered pleas of guilty to armed robbery and to murder in the first degree based upon the felony murder doctrine. After a sentencing hearing, defendant was sentenced to death on the murder charge, and judgment was arrested on the armed robbery charge. We determine the sentence of death to be disproportionate and therefore sentence defendant to life imprisonment.

The evidence, stated in summary, showed that on 20 August 1985, Melvin Richard LaVecchia worked as the kitchen manager at Po' Folks Restaurant in Jacksonville. He was required to make the night deposit of the day's receipts at Peoples Bank on Western Boulevard in Jacksonville. Defendant was acquainted with the routine followed by Mr. LaVecchia in making the nightly deposits.

Armed with a shotgun, defendant went to the Peoples Bank to await the arrival of Mr. LaVecchia. He hid in the bushes at the bank for about two hours and then drove to the restaurant to determine whether Mr. LaVecchia was still there. Upon seeing Mr. LaVecchia's car, defendant returned to his hiding place at the bank. Thereafter, about 1:25 a.m., Mr. LaVecchia arrived at the bank. He left his car and proceeded toward the night deposit box where he was accosted by defendant who demanded the moneybag. When Mr. LaVecchia hesitated, defendant fired the shotgun, striking him in the upper portion of both legs. As he fell, defendant grabbed the moneybag and ran to his car. Shortly thereafter, a police officer discovered Mr. LaVecchia and had him removed to the hospital, where he later died of cardiac arrest caused by the loss of blood from the shotgun wounds.

About 9:00 p.m. on 21 August, defendant was arrested on a warrant charging him with felonious breaking and entering of an automobile. After being properly advised as to his constitutional rights, defendant confessed to the murder and consented to a search of his motel room, where the shotgun was seized.

[1] Defendant first argues that the trial judge erred in denying his motion to suppress his confession and other evidence, on the ground that it was obtained as a result of an unlawful arrest and thereby is the "fruit of the poisonous tree" under *Dunaway v. New York*, 442 U.S. 200, 60 L.Ed. 2d 824 (1979). This alleged error is based upon a written pretrial motion to suppress. Defendant did not rely upon unlawful arrest as a basis for his motion. It was not mentioned or argued to the trial judge. The motion to suppress specifically states the grounds for the motion, and unlawful arrest is not one of them.

During the voir dire hearing on the motion to suppress, reference to the arrest warrant was repeatedly made, and defendant never objected or gave any indication that the legality of the arrest would be challenged upon appeal. The trial judge's order is based upon the voluntariness theory, without mention of the legality of defendant's arrest.

Now, on appeal, defendant for the first time attempts to raise the issue of his arrest as a basis to overturn the ruling of the trial judge. This he cannot do. *State v. Hunter*, 305 N.C. 106, 286 S.E. 2d 535 (1982). What we said in *Hunter* controls this case:

The theory upon which a case is tried in the lower court must control in construing the record and determining the validity of the exceptions. Further, a constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal. . . .

. . . .

. . . In order to clarify any misunderstanding about the duty of counsel in these matters, we specifically hold that when there is an objection to the admission of a confession or a motion to suppress a confession, counsel must specifically state to the court before voir dire evidence is received the basis for his motion to suppress or for his objection to the admission of the evidence.

*Id.* at 112, 286 S.E. 2d at 539.

Defendant may not swap horses after trial in order to obtain a thoroughbred upon appeal. *Weil v. Herring*, 207 N.C. 6, 175 S.E. 836 (1934). The issue of illegal arrest was not timely raised in this case.

[2] Defendant next argues that the trial judge erred in allowing the state's challenge for cause of juror Taylor. There is no merit in defendant's argument. A portion of the voir dire of Mrs. Taylor follows:

MR. HUDSON: Okay. Then I assume by your answer that if you are selected to serve as a juror in this case and we do get to the second phase, which is the penalty phase, if we do get into that and you go back in the Jury Room to deliberate after you have heard the evidence, the arguments from the attorneys, the instructions from the Judge, you could go back into the Jury Room to deliberate the second phase and you are convinced beyond a reasonable doubt that the appropriate penalty is the death penalty, could you come back in here and bring such a verdict?

MRS. TAYLOR: No, I don't think so.

. . . .

MR. HUDSON: Mrs. Taylor, let me see if I understand you. You're saying that in this case, based on your beliefs, that

under no circumstances you could return a verdict meaning the imposition of the death penalty?

MRS. TAYLOR: (Indicates negative response.) No.

. . . .

MR. HUDSON: You indicated earlier that you could not— when I asked you, you said you could not come back in the courtroom with a verdict of death.

MRS. TAYLOR: I did say that. I still feel that way. I just—

. . . .

THE COURT: Mrs. Taylor, if we were to reach the punishment stage of the trial; that is, after the defendant had been found guilty of first degree murder; if the jury so found it, the question is can and will you follow the law of North Carolina as to the sentence recommendations as I instruct you upon? Do you think you'll be able to follow my instructions?

MRS. TAYLOR: No, sir.

THE COURT: And that is because of your personal belief with regard to the death penalty. Is that correct?

MRS. TAYLOR: Unh-hunh.

THE COURT: Motion for cause is allowed. Objection is overruled.

The above portion of the voir dire is sufficient to sustain the trial judge's excusal of the juror for cause. *Wainwright v. Witt*, 469 U.S. 412, 83 L.Ed. 2d 841 (1985); *State v. Brown*, 315 N.C. 40, 337 S.E. 2d 808 (1985), *cert. denied*, 476 U.S. 1165, 90 L.Ed. 2d 733 (1986). Mrs. Taylor's responses to the trial judge clearly indicate that she was unwilling or unable to follow the law and her oath. Although her testimony may also have demonstrated an ambivalence toward the death penalty, she was properly excused because her testimony clearly showed her inability to follow the law. *State v. Brown*, 320 N.C. 179, 358 S.E. 2d 1, *cert. denied*, --- U.S. ---, 98 L.Ed. 2d 406 (1987).

[3] Likewise, defendant's contention that the trial judge erred in denying his challenge for cause to juror Marshburn is without merit. This juror knew four of the police officers who were pro-

spective witnesses for the state. Although the defendant searched diligently during voir dire to discover some indication that the juror would be partial to these witnesses, the juror unequivocally stated repeatedly that his acquaintance with them would not affect his verdict in any way. There was no evidence to the contrary. There being no showing of prejudice on the part of juror Marshburn, we hold that his mere acquaintance with the officers is insufficient to find the trial judge's ruling erroneous. *See State v. Whitfield*, 310 N.C. 608, 313 S.E. 2d 790 (1984).

[4]   Upon review of the prosecutor's opening statement, we find no prejudicial error. Before the opening statements commenced, the trial judge cautioned the jury that the statements were only forecasts of what counsel intended to prove and were not evidence and should not be considered as evidence by the jury.

Although defendant did not object to any of the prosecutor's opening statement, he now contends that in four respects it was so grossly egregious that the trial judge should have interrupted counsel ex mero motu. We cannot agree.

The challenged statement reads:

Under the law, before a death penalty can be imposed, our Legislature and our court has said there must be the presence of at least one aggravating factor among several that is set out in our statutes. If there is one aggravating factor that is present that is set out in our statute, then our court and our Legislature says that that is sufficient to justify a death sentence. Of course, there are a number of things set out. The aggravating factor that the State's evidence will show is present in this case is the factor that the offense was committed for pecuniary gain, and the Judge will give you some more instructions on it, but that this act was committed for pecuniary gain. That is, it was committed for the purpose of getting robbery—getting money. His reason for committing this was to get money. I am sure you can understand why the Legislature sets that out.

I mean, obviously, if you have got a killing in a Saturday night barroom brawl, that might not be something that would justify the death penalty or if somebody shot somebody in self-defense, that might not be something that would justify

the death penalty. But the court has said, and our Legislature has said, that if a killing occurs; for example, a lot of times it's in a bank robbery. For example, you shoot somebody. You're a store clerk; you shoot somebody, or in this case where Mr. LaVecchia went to make this night deposit and he shot him and he was killed, that that can be sufficient to justify the death penalty.

We do not find the statement to be so egregious as to require the judge on his own motion to interrupt counsel. The statement was a shorthand statement of the sentencing procedure in a capital case and was basically accurate, although certainly incomplete. One aggravating circumstance can be sufficient to support a recommendation of the death sentence. *State v. Zuniga*, 320 N.C. 233, 357 S.E. 2d 898 (1987). The statement that the state's evidence would show that the crime was committed for pecuniary gain was an accurate contention of the state. The reference to killings in barroom brawls and in self-defense, although not pertinent to this case, does not rise to the level that requires the trial judge to address them absent an objection. Last, the reference to armed robbery cases supporting the death penalty is not incorrect. *See State v. Gardner*, 311 N.C. 489, 319 S.E. 2d 591 (1984), *cert. denied*, 469 U.S. 1230, 84 L.Ed. 2d 369 (1985). Defendant's assignment of error is overruled.

[5] Defendant requested that several nonstatutory mitigating circumstances be submitted to the jury and argues that the denial of his requests was error. We are not persuaded. In order for defendant to succeed on this assignment, he must establish that (1) the nonstatutory mitigating circumstance is one which the jury could reasonably find had mitigating value, and (2) there is sufficient evidence of the existence of the circumstance to require it to be submitted to the jury.[1] Upon such showing by the defendant, the failure by the trial judge to submit such nonstatutory mitigating circumstance to the jury for its determination raises federal constitutional issues. *Lockett v. Ohio*, 438 U.S. 586, 57 L.Ed. 2d 973 (1978). *See State v. Wilson*, 322 N.C. 117, 367 S.E. 2d

---

1. This Court abandoned the *Pinch* test with respect to *statutory* mitigating circumstances because due process constitutional issues are involved and, as to constitutional issues, the *Pinch* test impermissibly shifts the burden of proof to the defendant. *State v. Wilson*, 322 N.C. 117, 367 S.E. 2d 589 (1988).

589 (1988). Whether a violation of a defendant's federal constitutional rights is prejudicial is controlled by N.C.G.S. § 15A-1443(b). Such violation is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1983). The burden is upon the state to so prove. *State v. Wilson,* 322 N.C. 117, 367 S.E. 2d 589. Insofar as *State v. Pinch,* 306 N.C. 1, 292 S.E. 2d 203, *cert. denied,* 459 U.S. 1056, 74 L.Ed. 2d 622 (1982), *reh'g denied,* 459 U.S. 1189, 74 L.Ed. 2d 1031 (1983), is in conflict with the standard we adopt today for the review of the failure of the trial judge to submit nonstatutory mitigating circumstances, it is overruled.

In applying this standard to defendant's request, we find no error. Briefly, the record shows that the evidence did not support the circumstance that defendant had no prior history of assaultive behavior. To the contrary, it disclosed that defendant had been engaged in prior assaultive actions. With respect to the circumstance of no violence toward others since his arrest, defendant failed to produce sufficient evidence to support this circumstance. Defendant's witness Dr. Stack only testified as to defendant's behavior during his four visits with defendant in jail. Defendant was in jail for about five months.

Defendant failed to produce any evidence that he had not fired a gun at anyone prior to the murder. Defendant's evidence was that he was "very gentle," had "no meanness in him," and was never involved in fights (there was contra evidence). One who is "very gentle," "has no meanness," and never fights could still discharge a firearm at another person under any number of varying circumstances.

The trial judge properly refused to submit as a mitigating circumstance that the crime was out of character for defendant. The evidence that might support this circumstance did not include defendant's character and behavior between 1980, when he joined the Marines, and 1985, when the offenses occurred.

The trial judge properly refused to submit the mitigating circumstance that defendant had adjusted well to jail life. The trial judge noted that there was no evidence to support the proposed circumstance and called upon defendant's counsel to point out the evidence supporting it. Defendant's counsel replied that he did not want to be heard.

The refusal of the trial judge to submit as a mitigating circumstance that defendant did not resist arrest was not error. The trial judge submitted as mitigating circumstances that defendant cooperated with the police upon his arrest, that he voluntarily confessed, and that he voluntarily agreed to searches of his car, motel room, home, and storage bin. The proposed circumstance was subsumed in these mitigating circumstances.

[6] Next, defendant argues that the prosecutor's closing argument was improper. Defendant made no objection to this argument. We have carefully examined the challenged argument, and especially the five specific portions raised in defendant's brief, and do not find that the argument was so grossly egregious that the trial judge was required to interrupt counsel absent an appropriate objection. *State v. Johnson*, 298 N.C. 355, 259 S.E. 2d 752 (1979).

[7] Defendant's argument that the trial judge failed to exercise his discretion in denying the jury's request for portions of the transcript is without merit. The transcript reveals that three times the trial judge stated he was denying the request in the exercise of his discretion. He even referred to the appropriate statute, N.C.G.S. § 15A-1233. *See State v. Lang*, 301 N.C. 508, 272 S.E. 2d 123 (1980).

[8, 9, 10] Defendant also raises for "preservation" the following nine issues: (1) constitutionality of pecuniary gain as an aggravating circumstance, (2) unanimity of jury verdict, form and weighing of issues, (3) constitutionality of N.C.G.S. § 15A-2000, (4) denial of defendant's motion for bill of particulars requesting state to specify aggravating circumstances it intends to rely upon, (5) lack of cross-section of community on trial jury, (6) state's challenge to juror because she was not a citizen, (7) denial of defendant's request to instruct jury that defendant will receive life if jury is unable to agree, (8) requiring defendant to prove existence of mitigating circumstances, and (9) requirement of unanimity of the jury in finding mitigating circumstances. Defendant concedes that each of these issues has been resolved by this Court contrary to defendant's arguments. Defendant has failed to persuade us that we should abandon our prior holdings as to the first eight of these issues and further discussion of them is not required.

[11] However, as to the requirement of unanimity of the jury in finding mitigating circumstances, defendant contends that the recent decision of the United States Supreme Court in *Mills v. Maryland*, 486 U.S. ---, 100 L.Ed. 2d 384 (1988), entitles him to at least a new sentencing hearing. This Court, in conference, determined that there should be additional briefing and argument in this case and all other cases presently before this Court with respect to the issues raised by *Mills v. Maryland*. Oral argument was heard on 22 August 1988. For the reasons expressed in *State v. McKoy*, 323 N.C. 1, 372 S.E. 2d 12 (1988), we reject defendant's argument based upon *Mills v. Maryland*.

[12] While we find that the recommendation of the death sentence by the jury was not arbitrary or capricious, we do conclude the death sentence to be disproportionate under all the facts and circumstances of this case. The process that this Court follows in carrying out its statutorily mandated duty on proportionality review is now well settled in the law and it would serve no useful purpose to repeat it here. *See generally State v. Lawson*, 310 N.C. 632, 314 S.E. 2d 493 (1984), *cert. denied*, 471 U.S. 1120, 86 L.Ed. 2d 267 (1985); *State v. Jackson*, 309 N.C. 26, 305 S.E. 2d 703 (1983); *State v. Williams*, 308 N.C. 47, 301 S.E. 2d 335, *cert. denied*, 464 U.S. 865, 78 L.Ed. 2d 177, *reh'g denied*, 464 U.S. 1004, 78 L.Ed. 2d 704 (1983).

The murder in this case does not rise to the level of those murder cases in which we have approved the death sentence upon proportionality review. This case is distinguished by the following: the conviction is based solely upon the felony murder theory; it has only one aggravating circumstance, pecuniary gain, N.C.G.S. § 15A-2000(e)(6); the jury found as mitigating circumstances that defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1), that defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000 (f)(2), that he confessed and cooperated upon arrest, that he voluntarily consented to a search of his motel room, car, home, and storage bin, and that he was abandoned by his natural mother at an early age. Defendant also pleaded guilty during the trial and acknowledged his wrongdoing before the jury.

Approximately fifty-one robbery-murder cases are in the pool. Of these, life sentences have been imposed in forty-four

cases and death sentences in seven. In five of these robbery-murder cases, the only aggravating circumstance was pecuniary gain. Life sentences were imposed in four of the five. The fifth case, *State v. Jackson*, 309 N.C. 26, 305 S.E. 2d 703, is the single case, other than the present appeal, in which the jury returned a death recommendation where the *only* aggravating circumstance was pecuniary gain. On appeal that death sentence was found to be disproportionate. Here, the mitigating circumstances are stronger than in *Jackson*, where only "no significant history of prior criminal activity" was found.

In the robbery-murder cases where the death sentence has been upheld, all but two involved multiple killings. Of those two, one involved the shooting of a second victim and one involved the kidnapping of the female victim. The case at issue cannot be equated with the robbery-murder convictions where the death sentence was upheld. From the evidence it appears that Benson intended only to rob; he fired at Mr. LaVecchia's legs rather than a more vital part of his body.

Certainly, this murder for profit was an outrageous crime, but when compared to the other similar cases in the proportionality pool, we cannot say that this death sentence is not disproportionate. We therefore hold as a matter of law that the death sentence imposed in this case is disproportionate within the meaning of N.C.G.S. § 15A-2000(d)(2). Upon this holding, the statute requires that this Court sentence defendant to life imprisonment in lieu of the death sentence. The language of the statute is mandatory. This Court has no discretion in determining whether a death sentence should be vacated. *State v. Jackson*, 309 N.C. 26, 305 S.E. 2d 703. The death sentence is vacated and defendant is hereby sentenced to imprisonment in the state's prison for the remainder of his natural life. The defendant is entitled to credit for days spent in confinement prior to the date of this opinion. The Clerk of the Superior Court of Onslow County shall issue a commitment accordingly.

Death sentence vacated and sentence of life imprisonment imposed.

Justice FRYE concurring in result.

The Court rejects defendant's argument based upon *Mills v. Maryland*, 486 U.S. ---, 100 L.Ed. 2d 384 (1988), for the reasons expressed by the majority of this Court in *State v. McKoy*, 323 N.C. 1, 372 S.E. 2d 12 (1988). I did not join the Court's decision in *McKoy* and I believe that it was wrongly decided. I therefore do not agree with the majority's rejection of defendant's argument based on the *Mills* issues for "the reasons expressed in *State v. McKoy*." I do agree with the Court's conclusion that this case does not rise to the level of those murder cases in which we have approved the death sentence upon proportionality review. Therefore, I concur with the majority in vacating the death sentence and sentencing defendant to life imprisonment.

Chief Justice EXUM joins in this concurring opinion.