ZACHARY, Judge.
*289 Shamele Collins (defendant) appeals from judgment entered on his pleas of guilty to trafficking in cocaine, possession of cocaine with intent to sell or deliver, misdemeanor possession of marijuana, possession of drug paraphernalia, and resisting, delaying, or obstructing a law enforcement officer. Defendant reserved his right to appeal the trial court's denial of his motion to suppress evidence obtained at the time of his arrest. On appeal defendant argues that the trial court erred by denying his suppression motion, on the grounds that the evidence was obtained during an unlawful search that violated defendant's rights under the Fourth Amendment to the United States Constitution, and that the trial court violated defendant's right to be present during his sentencing. We find no error in the trial court's denial of defendant's suppression motion, but vacate the judgment and remand for resentencing.
I. Factual and Procedural Background
On 13 December 2012, defendant was arrested on charges of trafficking in cocaine by possession of more than 28 but less than 200 grams of cocaine, possession of cocaine with intent to sell and deliver, possession of cocaine within 1000 feet of an elementary school, maintaining a dwelling for the purpose of keeping and selling a controlled substance, misdemeanor possession of marijuana, possession of drug paraphernalia, and resisting an officer. On 16 December 2013, the Grand Jury of Forsyth County indicted defendant for trafficking in cocaine by possession of more than 28 but less than 200 grams of cocaine, possession of cocaine with intent to sell and deliver, misdemeanor possession of marijuana, possession of drug paraphernalia, and resisting an officer. On 29 August 2014, defendant filed a motion to suppress evidence obtained at the time of defendant's arrest, on the grounds that the evidence was acquired as the result of an *353 unlawful search that violated his rights under the Fourth Amendment to the United States Constitution.
A hearing was conducted on defendant's suppression motion on 8 September 2014. Evidence elicited at the hearing tended to show the following: Winston-Salem Police Officer J.G. Gordon testified that on 13 December 2012 he was dispatched to an apartment on Franciscan Drive in Winston-Salem in order to assist the North Carolina Alcohol Law Enforcement Division (ALE) in serving a warrant on Jessica Farthing, who lived at the Franciscan Drive apartment. When Officer Gordon entered the apartment he smelled burned marijuana. Officer Gordon assisted the ALE officers by running a computer check of the names of those present in the apartment. Defendant initially told the officers that his name was "David Collins," but Officer Gordon was unable to find a *290 listing in the online database for a person named "David Collins" with biographical information that matched defendant's. ALE officers then found identification in the apartment with the name "Shamele Collins." Officer Gordon used an online photograph to confirm that defendant was actually Shamele Collins, and learned that the State of New York had an outstanding warrant for defendant's arrest and extradition on a narcotics charge.
Officer C. Honaker of the Austin, Texas, Police Department testified that on 13 December 2012 he was employed as a Winston-Salem Police Officer and had been dispatched to the Franciscan Drive apartment to aid in the arrest of Ms. Farthing. When Officer Honaker entered the apartment he noticed a "moderate to strong odor of burnt marijuana" inside. Officer Honaker and another law enforcement officer conducted a protective sweep of the apartment and found defendant and another man hiding upstairs. Officer Honaker placed defendant in handcuffs and conducted an external search of defendant's clothing and pockets, but did not find any contraband. Officer Honaker then escorted defendant downstairs and directed him to sit on the couch.
Based on the outstanding warrant for defendant's arrest, the odor of marijuana about defendant's person, and the fact that the defendant gave the officers a false name, Officer Honaker decided to conduct a "strip search" of defendant. Officer Honaker, assisted by Officer J.B. Gerald, moved defendant from the living room into the dining room in order to "secure his privacy" because "there were other people in the living room." Officer Honaker, Officer Gerald, and defendant were the only ones in the dining area. Officer Honaker informed defendant that he was going to conduct a strip search and removed defendant's handcuffs in the hopes that defendant would cooperate with the search. Defendant, however, refused to consent to the search. Defendant was wearing shoes and pants, but no shirt. When Officer Honaker attempted to remove the belt from defendant's pants, defendant struggled, preventing a search. Officer Honaker then lowered defendant to the ground and reattached the handcuffs. At that time, Officer Honaker observed a residue on the ground where defendant had been standing, which Officer Honaker described as a "small crystalline white, off-white rock substance" that appeared to be cocaine. Officer Honaker informed the trial court that he saw the white powder on the floor prior to removing any of defendant's clothing. After Officer Honaker noticed the white crystalline material, he "completed a strip search of [defendant's] person." When Officer Honaker lowered defendant's pants, he "noticed that [defendant's] butt cheeks were clenched," so Officer Honaker lowered defendant's boxers *291 and "saw a plastic baggie with white residue in it-the buttocks crack." Officer Gerald also observed "what appeared to be cocaine in [defendant's] buttocks area." Officer Honaker ultimately removed "several plastic baggies ... two of which contained an off-white substance" and "a third baggie that contained a green vegetable-like substance consistent with marijuana" from between defendant's buttocks. After he conducted the search, Officer Honaker "realized there was also some [white powder] beneath where [defendant] was sitting on the sofa" as well as a trail of white material " coming down the stairs to the sofa where [defendant] was sitting." Defendant was arrested for offenses arising from his possession of drugs, for resisting *354 an officer, and for the outstanding New York warrant.
At the close of the hearing, the trial court announced its ruling denying the defendant's suppression motion. Later that day, defendant entered pleas of guilty to the charged offenses, reserving his right to appeal the denial of his motion to suppress evidence. The trial court consolidated the convictions for purposes of sentencing and orally rendered a judgment sentencing defendant to thirty-five to forty-two months imprisonment. Defendant gave notice of appeal in open court. On 8 September 2014, the trial court entered a written judgment sentencing defendant to thirty-five to fifty-one months imprisonment. On 10 September 2014, the trial court entered an order memorializing its denial of defendant's suppression motion.
II. Standard of Review
Defendant first argues on appeal that the trial court erred by denying his motion to suppress evidence seized at the time of his arrest. The standard of review of a trial court's ruling on a defendant's suppression motion is well-established:
The scope of appellate review of a trial court's order granting or denying a motion to suppress evidence "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." ... If the trial court's findings of fact are supported by competent evidence, they are conclusive on appeal.
State v. Fowler, 220 N.C.App. 263, 266, 725 S.E.2d 624, 627 (2012) (quoting State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982), and citing State v. Barnard, 184 N.C.App. 25, 28, 645 S.E.2d 780, 783 (2007), *292 aff'd, 362 N.C. 244, 658 S.E.2d 643 (2008) ). " However, when, as here, the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal. Conclusions of law are reviewed de novo and are subject to full review." State v. Biber, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citing State v. Baker, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984) (internal citation omitted)). In this case, defendant does not challenge the sufficiency of the evidence supporting the trial court's findings of fact, which are therefore conclusively established on appeal. The issue presented on appeal is whether the trial court's unchallenged findings of fact support its conclusion of law that "the search conducted [of defendant] was a reasonable lawful search and the defendant's rights under the 4th and 5th Amendments [to the Constitution] were not violated."
Defendant also argues that the trial court erred as a matter of law by entering a judgment that imposed a longer prison sentence than the trial court had announced when it orally rendered judgment in court. Questions of law are reviewed de novo by this Court. State v. Khan, 366 N.C. 448, 453, 738 S.E.2d 167, 171 (2013) (citing In re Greens of Pine Glen Ltd. P'ship, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) ).
III. Denial of Defendant's Suppression Motion
At the time of defendant's arrest, he was in possession of two bags of cocaine and a bag containing marijuana, all of which were seized by Officer Honaker. These items were found between defendant's buttocks when defendant's pants were removed and his underwear was removed or pulled down. On appeal, defendant argues that evidence of the drugs found on his person should have been suppressed because the drugs were discovered during an unlawful "strip search" in violation of defendant's rights under the Fourth Amendment to the United States Constitution. We disagree.
A. Legal Principles
The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. " '[T]he Fourth Amendment precludes only those intrusions into privacy of the body which are unreasonable under the circumstances.' " State v. Norman, 100 N.C.App. 660, 663, 397 S.E.2d 647, 649 (1990) (quoting *355 State v. Cobb, 295 N.C. 1, 20, 243 S.E.2d 759, 770 (1978) (internal citation omitted)).
*293 Generally, warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment of the United States Constitution. However, a well-recognized exception to the warrant requirement is a search incident to a lawful arrest. Under this exception, if the search is incident to a lawful arrest, an officer may "conduct a warrantless search of the arrestee's person and the area within the arrestee's immediate control."
State v. Logner, 148 N.C.App. 135, 139, 557 S.E.2d 191, 194 (2001) (quoting State v. Thomas, 81 N.C.App. 200, 210, 343 S.E.2d 588, 594 (1986) (other citations omitted)). " 'A search is considered incident to arrest even if conducted prior to formal arrest if probable cause to arrest exists prior to the search and the evidence seized is not necessary to establish that probable cause.' " State v. Robinson, 221 N.C.App. 266, 276, 727 S.E.2d 712, 719 (2012) (quoting State v. Mills, 104 N.C.App. 724, 728, 411 S.E.2d 193, 195 (1991) (internal citations omitted)). Officer Honaker's search of defendant is properly classified as a search incident to arrest. There was an outstanding warrant for defendant's arrest. In addition, defendant was charged with, and ultimately pleaded guilty to, the offense of resisting, delaying or obstructing a law enforcement officer, based on giving a false name to the officers.
" '[T]he central inquiry under the Fourth Amendment [is] the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal liberty.' " State v. Peck, 305 N.C. 734, 740, 291 S.E.2d 637, 641 (1982) (quoting Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ). Moreover, the Court has advised that:
[t]he test for determining the reasonableness of the search under the Fourth and Fourteenth Amendments to the United States Constitution "is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."
State v. Scott, 343 N.C. 313, 327, 471 S.E.2d 605, 613 (1996) (quoting State v. Primes, 314 N.C. 202, 211, 333 S.E.2d 278, 283 (1985) ) (quoting Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884-85, 60 L.Ed.2d 447, 481 (1979) ). On appeal, defendant cites a number of federal cases. It is axiomatic that:
*294 "North Carolina appellate courts are not bound, as to matters of federal law, by decisions of federal courts other than the United States Supreme Court." Even so, despite the fact that they are "not binding on North Carolina's courts, the holdings and underlying rationale of decisions rendered by lower federal courts may be considered persuasive authority in interpreting a federal statute."
In re Fifth Third Bank, 216 N.C.App. 482, 488-89, 716 S.E.2d 850, 855 (2011) (quoting Enoch v. Inman, 164 N.C.App. 415, 420, 596 S.E.2d 361, 365 (2004), and McCracken & Amick, Inc. v. Perdue, 201 N.C.App. 480, 488, n. 4, 687 S.E.2d 690, 695 n. 4 (2009), disc. review denied, 364 N.C. 241, 698 S.E.2d 400 (2010) ), cert. denied, 366 N.C. 231, 731 S.E.2d 687 (2012).
In analyzing federal constitutional questions, we look to decisions of the United States Supreme Court[,] ... [and] decisions of the North Carolina Supreme Court construing federal constitutional ... provisions, and we are bound by those interpretations. We are also bound by prior decisions of this Court construing those provisions, which are not inconsistent with the holdings of the United States Supreme Court and the North Carolina Supreme Court.
Johnston v. State, 224 N.C.App. 282, 288-89, 735 S.E.2d 859, 865 (2012) (citing State v. Elliott, 360 N.C. 400, 421, 628 S.E.2d 735, 749 (2006), and In re Civil Penalty, 324 N.C. 373, 379 S.E.2d 30 (1989) ), affd, 367 N.C. 164, 749 S.E.2d 278 (2013).
C. Discussion
As discussed above, the issue for our determination is whether the trial court's *356 findings of fact support its conclusion that the search of defendant's person did not violate defendant's Fourth Amendment right to be free of unreasonable searches. In its order, the trial court made the following findings of fact:
1. On December 13, 2012, Winston Salem Police Department's Street Crimes Unit was asked to assist Alcohol Law Enforcement (ALE) in serving an Outstanding Warrant for a Jessica Farthing[.]
...
*295 5. [Winston-Salem Police] Officer Honaker had been advised that Farthing's boyfriend may also be in the residence and might have outstanding warrants as well.
6. Officers Honaker, Gerald, and Gordon smelled an odor of burned marijuana ranging from moderate to strong inside the residence.
...
8. There were two subjects located upstairs[:] the defendant and another male named [Steven] Duren.
9. [Officer] Honaker thought the defendant ... [was] hiding.
10. Officer Honaker smelled marijuana on the defendant's person. He patted down and searched the defendant upstairs, including going into his pockets.
11. The defendant and the other subject from upstairs were taken downstairs to the couch.
12. Officers tried to ascertain the defendant's name, [but] the defendant gave Officer Honaker ... a false name....
...
14. Another officer or agent in the residence located a piece of paper with the name 'Shamele Collins' on it[.]
15 ... [Officer Gordon] determine[d] that Shamele Collins, the defendant, had an outstanding warrant out of New York for Dangerous Drugs. Officer Gordon confirmed that the warrant was still active and that New York would extradite.
16. Officer Gordon advised Officer Honaker of the outstanding warrant for the defendant's arrest.
17. After finding out about the warrant, Officer Honaker took the defendant into the dining room/kitchen area, which was off the living room.
18. Officer Honaker removed the defendant's handcuffs.
19. The defendant was wearing pants and shoes but no shirt.
20. Officer Honaker advised the defendant that he was going to strip search him and the defendant did not consent.
*296 21. [When Officer] Honaker attempted to remove the defendant's belt, the defendant grabbed toward that area. Officer Honaker believed this was a furtive move by the defendant and that the defendant may have been trying to sucker punch him.
22. Officer Honaker took the defendant to the ground using an "arm bar."
23. The defendant was placed back into handcuffs.
24. At that point Officer Honaker noticed a white crystal substance consistent with cocaine on the floor where the defendant had been standing in the kitchen/dining area.
25. Officer Honaker then searched the defendant without the defendant's consent.
26. Officer Honaker removed the defendant's shoes then his socks and searched them. Then Officer Honaker either pulled down or removed his pants and then pulled down or removed the defendant's boxers.
27. Officer Honaker saw that the defendant was clenching his butt cheeks.
28. Officer Honaker removed plastic baggies from between the defendant's butt cheeks, [of which two] contained an off white rock substance consistent with crack cocaine and one contained what the officer believed to be marijuana.
29. One of the bags [of] cocaine was torn open and the cocaine was coming out.
30. After the search Officer Honaker noticed more cocaine where the defendant had been sitting on the couch and a trail of cocaine coming down the stairs where the defendant had been moved.
31. At some point during the incident Officer Honaker became aware that the defendant was in fact Jessica Farthing's boyfriend.
*357 32. The defendant was arrested for the outstanding warrant from New York and the drug charges from this incident.
*297 On the basis of its findings of fact the trial court reached the following conclusions of law:
2. The place the search was conducted was in the dining area, removed or away from other people and that provided some privacy.
3. The scope was either pulling or removing down defendant's pants and boxers to expose his buttocks which was intrusive.
4. The manner in which the search was performed was reasonable under the circumstances. The court finds that there were exigent circumstances including: the fact that the crystals [were] on the floor where defendant was standing indicated that they were leaving the defendant's person quickly leading to possible loss or destruction of evidence and that the bag of cocaine was not sealed leading to a danger to the defendant of absorbing some of the substance through his large intestine. The search was conducted by officers of the same sex and the only female present at the residence, according to the evidence, was Jessica Farthing the defendant's girlfriend.
5. The officers had justification to perform the search. Officer Honaker had a specific basis to believe drugs were hidden on the defendant because of the cocaine where the defendant was standing and the odor of marijuana coming from defendant's person. Further the defendant's actions of giving a false name, attempting to conceal his identity to avoid arrest further justified the search.
6. The search of the defendant, although intrusive in manner, was conducted in a reasonable manner and it was incident to arrest.
7. Based on the foregoing the court finds that the search conducted was a reasonable lawful search and the defendant's rights under the 4th ... Amendment [ ] were not violated.
We conclude that the trial court's unchallenged findings of fact support its conclusion that the search of defendant's person, although intrusive, was reasonable under the factual circumstances presented and did not violate defendant's rights under the Fourth Amendment. In reaching *298 this conclusion, we have carefully considered defendant's arguments, but do not find them persuasive.
Defendant maintains that a search that is determined to be a "strip search" is violative of a defendant's Fourth Amendment rights unless we find that the search was reasonable under the factual circumstances together with the existence of additional facts that are applicable to "strip searches." Specifically, defendant contends that in State v. Battle, 202 N.C.App. 376, 388, 688 S.E.2d 805, 815 (2010), this Court determined that a "strip search" is unreasonable unless supported by "probable cause and exigent circumstances."
However, we "note that neither the United States Supreme Court nor the appellate courts of this State have clearly defined the term strip search." As the United States Supreme Court recently stated ... "The term is imprecise." ... For that reason, there is no precise definition of what a 'strip search' actually is. Moreover, the United States Supreme Court has specifically stated that [it] "would not define strip search and its Fourth Amendment consequences in a way that would guarantee litigation about who was looking and how much was seen."
Robinson, 221 N.C.App. at 277, 727 S.E.2d at 719 (quoting Battle, 202 N.C.App. at 381, 688 S.E.2d at 811 ; Florence v. Bd. of Chosen Freeholders, --- U.S. ----, ----, 132 S.Ct. 1510, 1515, 182 L.Ed.2d 566, 574 (2012) ; and Safford Unified Sch. Dist. # 1 v. Redding, 557 U.S. 364, 374, 129 S.Ct. 2633, 2641, 174 L.Ed.2d 354, 364 (2009) ). We also note that in Robinson, 221 N.C.App. at 281, 727 S.E.2d at 722, decided after Battle , this Court "conclude[d] that the mode of analysis outlined in Battle ... only applies in the event that the investigating officers lack a specific basis for believing that a weapon or contraband is present beneath the defendant's underclothing." Id. Thus, it would appear that where, as in the present case, there exists probable cause to believe that contraband was secreted *358 beneath the defendant's clothing, we are not required either to "officially" deem this to be a "strip search"[1] or to find the existence of exigent circumstances before we can declare the search of this defendant to be reasonable. We are not, however, required *299 to reach a definite conclusion on the validity of defendant's proposed approach to the determination of the constitutionality of the search at issue. Assuming, arguendo, that the trial court was required to find the existence of exigent circumstances and evidence supporting a reasonable belief that defendant was secreting a controlled substance from under his outer clothing, we conclude that both of these factors were present in this case. In reaching this conclusion, we rely in part upon the following undisputed facts:
1. Law enforcement officers were present in the apartment to arrest Ms. Farthing, who lived there.
2. When defendant was asked by law enforcement officers to identify himself, he gave a false name.
3. When a law enforcement officer ran defendant's true name on a database, the officers learned that there was an outstanding warrant for arrest and extradition of defendant from New York for a narcotics offense.
4. The house and defendant's person had the odor of marijuana.
5. Based on defendant's giving a false name and the fact that defendant smelled of marijuana, Officer Honaker told defendant that he intended to conduct a "strip search" of defendant.
6. Prior to removing defendant's pants, Officer Honaker observed particles of white crystalline powder on the floor where defendant had been standing.
Defendant argues on appeal that the search was conducted in the absence of any particularized suspicion that he was concealing drugs on his person or that there were any exigent circumstances. Defendant's only support for this position is his assertion that, in assessing the reasonableness of Officer Honaker's search, the trial court was barred from consideration of the cocaine observed on the floor where defendant had been standing. Defendant contends that, pursuant to this Court's holding in Battle, exigent circumstances must be present before the "initiation" of a strip search and that in this case the search was "initiated" when Officer Honaker grabbed at defendant's belt. During the hearing on defendant's suppression motion, however, defendant was specifically asked by the trial court to comment on the relevance of the cocaine on the floor to the issue of the reasonableness of the search. Defendant's only argument was that the presence of powder on the floor did not *300 provide "grounds for arrest" because it had not been "field tested" at that point. Defendant never argued that the trial court could not consider the presence of the powder because Officer Honaker observed the powder after he had decided to search defendant.
N.C.R.App. Proc. 10(a)(1) provides that "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make" and that the party must also "obtain a ruling upon the party's request, objection, or motion." "Where a theory argued on appeal was not raised before the trial court, the appellate court will not consider it because '[a] defendant may not swap horses after trial in order to obtain a thoroughbred upon appeal.' " State v. Henry, ---N.C.App. ----, ----, 765 S.E.2d 94, 99 (2014) (quoting State v. Benson, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988), abrogated in part on other grounds by State v. Hooper, 358 N.C. 122, 591 S.E.2d 514 (2004) ). Accordingly, because defendant failed to raise the timing of Officer Honaker's observation of powder on the floor "as an issue in the trial court at the hearing on his motion to suppress, the issue is not properly before this Court on appeal, and we therefore will not consider it." Id. (citing *359 State v. Eason, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991), and Benson, 323 N.C. at 321, 372 S.E.2d at 519 ).
We conclude that in ruling on defendant's motion to suppress evidence the trial court could properly consider the fact that Officer Honaker saw a white crystalline substance on the ground where defendant had been standing. This observation created the exigent circumstances found by the trial court in that "the fact that the crystals [were] on the floor where defendant was standing indicated that they were leaving the defendant's person quickly leading to possible loss or destruction of evidence and that the bag of cocaine was not sealed leading to a danger to the defendant of absorbing some of the substance through his large intestine." The presence of a white powder where defendant had been standing also gave rise to a reasonable suspicion that defendant was concealing narcotics under his clothes.
Defendant further contends that the search was unreasonable because there were others present in the apartment who might have observed the officer's search of defendant. In support of this contention, defendant cites cases discussing searches conducted by the side of a road or in another public location. In this case, however, defendant was searched in the dining area of a private apartment. In its order the trial court concluded in relevant part that the "place the search was conducted was in the dining area, removed or away from other people and *301 that provided some privacy" and that "[t]he search was conducted by officers of the same sex and the only female present at the residence, according to the evidence, was Jessica Farthing the defendant's girlfriend." We find that the undisputed findings that the search was conducted in a private residence and in a separate room from the others who were in the apartment adequately supported the trial court's conclusion that the law enforcement officers exercised reasonable concern for defendant's privacy. For the reasons discussed above, we conclude that the trial court did not err by denying defendant's suppression motion.
IV. Right to be Present at Sentencing
Defendant also argues that his sentence was imposed in violation of his right to be present when the judgment against him was entered. This argument has merit.
"It is well-settled that a defendant has a right to be present at the time that his sentence is imposed." State v. Leaks, --- N.C.App. ----, ----, 771 S.E.2d 795, 799, disc. review denied, - -- N.C. ----, 775 S.E.2d 870 (2015) (citing State v. Crumbley, 135 N.C.App. 59, 66, 519 S.E.2d 94, 99 (1999) ). In Leaks the "trial court, in the presence of defendant, sentenced defendant ... to a minimum term of 114 months and a maximum term of 146 months imprisonment. Subsequently, the trial court entered written judgment reflecting a sentence of 114 to 149 months active prison time." This Court held:
Given that there is no indication in the record that defendant was present at the time the written judgment was entered, the sentence must be vacated and this matter remanded for the entry of a new sentencing judgment.... Under the North Carolina structured sentencing chart, if the trial court intended to sentence defendant to 114 months minimum incarceration, it was required to impose the 149 month maximum term. However, if the trial court intended to impose a maximum term of 146 months, it was required to impose the corresponding minimum term of 111 months imprisonment. Regardless, there is no evidence that defendant was present when the trial court entered its written judgments. Because the written judgments reflect a different sentence than that which was imposed in defendant's presence during sentencing, we must vacate defendant's sentence and remand for the entry of a new sentencing judgment.
*302 Leaks, --- N.C.App. at ----, 771 S.E.2d at 799-800 (citing Crumbley and State v. Hanner, 188 N.C.App. 137, 141, 654 S.E.2d 820, 823 (2008) ).
In the instant case, the trial court orally sentenced defendant to a prison term of thirty-five to forty-two months. The written judgment sentenced defendant to imprisonment for thirty-five to fifty-one months. As in Leaks, the original sentence was for a minimum sentence that did not correspond to the orally announced maximum sentence, requiring the trial court to either identify the *360 appropriate maximum sentence where the minimum sentence is thirty-five months, or to identify the correct minimum sentence for a maximum sentence of forty-two months. Defendant was not present when the trial court made its decision and had no opportunity to argue for the imposition of the shorter sentence. Accordingly, the facts of this case are indistinguishable from Leaks, and require us to remand for resentencing.
For the reasons discussed above, we hold that the trial court did not err by denying defendant's motion to suppress evidence obtained at the time of his arrest, and that the judgment in this case must be vacated and the case remanded for a new sentencing hearing.
NO ERROR IN PART, VACATED AND REMANDED IN PART.
Judge BRYANT concurs in the result.
Judge ELMORE dissents in a separate opinion.

In his appellate brief, defendant repeatedly asserts that he was subject to "a strip and body cavity search." The evidence is undisputed, however, that the contraband was discovered as soon as defendant's underwear was lowered or removed and that Officer Honaker did not search defendant's "body cavities."